898 F.2d 896
 Annabelle SMITH, Charles Coplin, Margaret Coplin, Gloria
Young and Tito Manor
v.
FIDELITY CONSUMER DISCOUNT COMPANY, Jerry Silver, Marshall
Gorson, Kutner Buick, Inc. and Samson Motors, Inc.
Appeal of FIDELITY CONSUMER DISCOUNT COMPANY.
 No. 88-1406.
 United States Court of Appeals,
Third Circuit.
 Argued Nov. 29, 1988.
Opinion filed on June 27, 1989 in Nos.88-1406 and 88-1444.
Opinion withdrawn as to Nos. 88-1406
and 88-1444 and, as modified, filed
as to No. 88-1406 on March 15, 1990.
 
 Jeffrey S. Saltz (argued), Alan S. Kaplinsky, Wolf, Block, Schorr & Solis-Cohen, Philadelphia, Pa., for appellant.
 Eric L. Frank (argued), David A. Searles, Community Legal Services, Inc., Philadelphia, Pa., for appellees.
 Alan C. Gershenson, Dennis H. Replansky, Timothy M. Kolman, Leonard A. Bernstein, Blank, Rome, Comisky, McCauley, Philadelphia, Pa., for amicus curiae, Pennsylvania Financial Services Ass'n.
 Before SEITZ*, STAPLETON and COWEN, Circuit Judges.
 OPINION OF THE COURT
 SEITZ, Circuit Judge.
 
 
 1
 Fidelity Consumer Discount Corporation ("Fidelity") appeals from the final judgment of the district court, specifically the order of the district court granting the motion of Annabelle Smith, Charles Coplin, and Margaret Coplin,[1] (herein denominated "plaintiffs" unless otherwise indicated) for summary judgment on their claims under the Truth-in-Lending Act ("TILA"), 15 U.S.C. Sec. 1601 et seq. 686 F.Supp. 504. The district court had jurisdiction pursuant to 28 U.S.C. Sec. 1331. We have jurisdiction under 28 U.S.C. Sec. 1291.
 
 I. BACKGROUND
 
 2
 Fidelity, a Pennsylvania corporation in the business of making loans to the general public, is a wholly owned subsidiary of Equitable Credit and Discount Company ("Equitable"). Silver is the president and chief operating officer of Fidelity. Gorson is the majority stockholder of Equitable. They will be referred to collectively as "Fidelity" unless otherwise indicated.
 
 
 3
 The claims of the plaintiffs arose in connection with three loans extended by Fidelity. In each of the three loan transactions, Fidelity extended credit for the purchase of an automobile and held the buyer's, or in one case the buyer's cosigner's, home as security for the car loan. Because the district court entered judgment on cross-motions for summary judgment, our review is plenary. Solomon v. Klein, 770 F.2d 352, 353 (3d Cir.1985).
 
 II. DISCUSSION
 
 4
 We proceed to address plaintiffs' TILA claims.
 
 
 5
 Through TILA, Congress sought to remedy the "divergent and often fraudulent practices by which credit customers were apprised of the terms of the credit extended to them." Johnson v. McCrackin-Sturman Ford, Inc., 527 F.2d 257, 262 (3d Cir.1975). Indeed, the congressionally stated purpose of TILA is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him." 15 U.S.C. Sec. 1601(a). TILA, as a remedial statute which is designed to balance the scales "thought to be weighed in favor of lenders," is to be liberally construed in favor of borrowers. Bizier v. Globe Financial Services, 654 F.2d 1, 3 (1st Cir.1981). See Johnson, 527 F.2d at 262.
 
 
 6
 TILA achieves its remedial goals by a system of strict liability in favor of the consumers when mandated disclosures have not been made. 15 U.S.C. Sec. 1640(a). A creditor who fails to comply with TILA in any respect is liable to the consumer under the statute regardless of the nature of the violation or the creditor's intent. Thomka v. A.Z. Chevrolet Inc., 619 F.2d 246, 249-50 (3d Cir.1980). "[O]nce the court finds a violation, no matter how technical, it has no discretion with respect to liability." Grant v. Imperial Motors, 539 F.2d 506, 510 (5th Cir.1976).
 
 
 7
 A single violation of TILA gives rise to full liability for statutory damages. Damages include actual damages incurred by the debtor plus a civil penalty equal to double the finance charge up to a maximum of $1,000. 15 U.S.C. Sec. 1640(a)(1)(2)(A)(i). Multiple violations of TILA in the course of a single loan transaction do not yield multiple civil penalties but result in only a single penalty. 15 U.S.C. Sec. 1640(g).
 
 
 8
 In addition, when a creditor takes a security interest against property which is the principal dwelling of the debtor, the debtor has the right to rescind the transaction until the later of (1) midnight of the third day following the transaction or (2) the date on which the creditor delivers to the consumer the notice of the right to rescission and the material disclosures that TILA requires. 15 U.S.C. Sec. 1635. Exercise of the right to rescind under Sec. 1635 results in discharge of the consumer's liability for any finance or other charge and in discharge of any security interest taken in conjunction with the extension of credit. 15 U.S.C. Sec. 1635(b).
 
 
 9
 To implement TILA, Congress "delegated expansive authority to the Federal Reserve Board to elaborate and expand the legal framework governing commerce in credit." Ford Motor Credit Co. v. Milhollin, 444 U.S. 555, 560, 100 S.Ct. 790, 794, 63 L.Ed.2d 22 (1980). "The Board exerted its responsibility by promulgating Regulation Z, 12 C.F.R. Part 226 (1979)," Id., which "absent some obvious repugnance to the statute should be accepted by the courts, as should the Board's interpretation of its own regulation." Anderson Brothers Ford v. Valencia, 452 U.S. 205, 219, 101 S.Ct. 2266, 2274, 68 L.Ed.2d 783 (1981). As the Supreme Court has noted, "traditional acquiescence in administrative expertise is particularly apt under TILA, because the Federal Reserve Board has played a pivotal role in setting the statutory machinery in motion [and] ... the Act is best construed by those who gave it substance in promulgating regulations thereunder." Ford Motor Credit Co. v. Milhollin, 444 U.S. at 566, 100 S.Ct. at 797.
 
 
 10
 Here Smith as well as Charles and Margaret Coplin requested, and the district court awarded them, both statutory and rescissory damages. We next address Fidelity's attack on each such liability determination.
 
 1. Annabelle Smith
 
 11
 Herbert Smith is the son of Annabelle Smith. On January 27, 1984, the Smiths and Fidelity entered into a loan transaction to enable Herbert to buy a used car. Annabelle Smith used her house as collateral for the loan.
 
 
 12
 The total amount of financing was $5,500. Of the $5,500, $4,216.59 was given directly to Herbert and Annabelle in the form of a check made out to the two of them. In addition, $1,008.34 was charged as an "origination fee": $990 as prepaid finance charges and $18.34 as prepaid interest. Finally, $257.07 was used to record the fact that the title to Annabelle Smith's house was clear and for other related costs. Among the $257.07 charges, was a charge of $13. This $13 was to be used to pay the filing fee to clear Smith's title of record and establish that Troy Acceptance Corporation, which previously held a lien on Smith's property, no longer had a lien on Smith's property. Fidelity, however, was never able to obtain the necessary release from Troy and the filing was never made; the $13 was not returned to Annabelle Smith.
 
 
 13
 In May, 1986, Annabelle Smith sought to rescind the transaction pursuant to TILA but Fidelity refused. Annabelle Smith then brought this action seeking both rescissory relief and monetary damages under TILA. Specifically, Smith claims, and the district court found, that Fidelity violated TILA (1) by failing to disclose the $13 fee as a finance charge; and (2) by failing to properly itemize in its disclosure form the amount financed. On appeal, Smith continues to rely on the above bases for TILA liability found by the district court as well as several other grounds for imposing liability. The district court did not consider the merits of these additional grounds. Fidelity challenges each of the findings of liability and asks us in the exercise of our discretion not to review the additional grounds.
 
 
 14
 a. $13 Filing Fee
 
 
 15
 Finance charges are defined at 15 U.S.C. Sec. 1605(a) as "the sum of all charges, payable directly or indirectly by the person to whom credit is extended, and is imposed directly or indirectly by the creditor as an incident to the extension of credit." Failure to disclose the total finance charge not only affords the consumer a remedy of statutory damages but also constitutes a material violation entitling the consumer to rescind the loan. 15 U.S.C. Sec. 1640(a); 12 C.F.R. Sec. 226.23(a)(3) n. 48.
 
 
 16
 In the Smith transaction, Fidelity withheld certain money from the loan proceeds distributed to Smith in order to pay for filing fees to clear title to Smith's house. Under 12 C.F.R. Sec. 226.4(e)(2) "[t]axes and fees prescribed by law that actually are or will be paid to public officials for determining the existence of or for perfecting, releasing or satisfying a security claim" are not finance charges. In this case, however, Fidelity was unable to obtain a signed release from Troy Acceptance because Troy was no longer in business and Fidelity simply retained the money, i.e., $13, which it had planned to use to clear Smith's title of Troy's lien. On these facts the district court found that the $13 was an undisclosed finance charge because the funds were never used to release a security interest.
 
 
 17
 We conclude, on the facts of this case, that the $13 charge cannot properly be considered a "finance charge." The effect of subsequent events on the accuracy of disclosures is dealt with in 12 C.F.R. Sec. 226.17(e) which states:
 
 
 18
 If a disclosure becomes inaccurate because of an event that occurs after the creditor delivers the required disclosures, the inaccuracy is not a violation of this regulation.
 
 
 19
 The purpose of this regulation is to relieve creditors from making disclosures regarding every contingency which might arise. Cf. Greer v. General Motors Acceptance Corp., 505 F.Supp. 692, 694 (N.D.Ga.1980). Indeed, the Official Staff Interpretation of Sec. 226.17(e) states:
 
 
 20
 Inaccuracies in disclosures are not violations if attributable to events occurring after the disclosures are made. For example, when the consumer fails to fulfill a prior commitment to keep collateral insured and the creditor provides the coverage and charges the consumer for it, such a charge does not make the original disclosure inaccurate.
 
 
 21
 12 C.F.R. Sec. 226.17(e) (Supp. I 1988).
 
 
 22
 It is undisputed that the $13, when charged by Fidelity, was taken by Fidelity for the purpose of releasing the lien of Troy of record. There is no contention that Fidelity, at the time when it charged the $13, knew that Troy was no longer in business or that it would be unable to obtain a signed release from a Troy representative.[2] Therefore, when Fidelity disclosed to Smith that $13 was being charged to release Troy's lien of record, the disclosure was accurate. It was only the subsequent inability on the part of Fidelity to obtain the release, despite diligent efforts, that prevented compliance with TILA. We conclude that because Fidelity charged $13, intending to use it to release a lien of record, Fidelity's subsequent inability to obtain this release, due to no fault of its own, does not render the fee a "finance charge" within the meaning of the statute. Fidelity therefore did not violate the statute when it failed to include the sum as a finance charge. Thus, we find ourselves in disagreement with the district court.
 
 
 23
 b. Inaccuracy in Itemization of Amount Financed
 
 
 24
 In the Smith transaction the TILA disclosure statement listed the "amount given to me directly" as $5,224.93 while the actual amount given directly to Annabelle Smith was only $4,216.59. Based on this inaccuracy Smith asks for both statutory and rescissory relief.
 
 
 25
 Section 226.18 of Regulation Z sets forth the disclosures required to be made by a creditor in a closed-end credit transaction. In enumerating more than fifteen items to be disclosed, Sec. 226.18 provides in pertinent part:
 
 
 26
 For each transaction, the creditor shall disclose the following information, as applicable:
 
 
 27
 * * * * * *
 
 
 28
 (b) Amount Financed. The "amount financed" using the term, and a brief description such as "the amount of credit provided to you or on your behalf."
 
 
 29
 * * * * * *
 
 
 30
 (c) Itemization of amount financed.
 
 
 31
 (1) A separate written itemization of the amount financed including:
 
 
 32
 (i) The amount of any proceeds distributed directly to the consumer.
 
 
 33
 The district court concluded that Fidelity violated Sec. 226.18(c)(1) of Regulation Z in failing to disclose accurately the amount distributed directly to Smith. The district court then determined that this violation entitled Smith both to statutory damages and to rescind the loan transaction. Fidelity does not dispute the fact that it violated Sec. 226.18 and that Smith is entitled to the $1,000 in statutory damages which the district court awarded to her. Fidelity, however, claims that Smith is not entitled to rescission based on this violation.
 
 
 34
 Smith's right to rescission is found at 15 U.S.C. Sec. 1635. This section allows a borrower to rescind a loan transaction until all "material disclosures" are delivered to him or her. Footnote 48 to 12 C.F.R. Sec. 226.23(a)(3) states that "[t]he term 'material disclosures' means the required disclosures of annual percent rate, the finance charge, the amount financed, the total of payments, and the payment schedule."[3] Thus, on its face the applicable regulation appears to foreclose Smith's argument that the itemization of the amount financed is a material disclosure.
 
 
 35
 Moreover, use of the term "means" in defining material disclosures, rather than a phrase such as "including but not limited to" or "among other things," compels the conclusion that the list of material disclosures was meant to be exhaustive rather then illustrative. Cf. Official Staff Interpretations, 12 C.F.R. Sec. 226(4)(a) (Supp. I 1988). The language of the regulation therefore appears to leave no room for a construction which expands upon the stated language. See Official Staff Interpretation 12 C.F.R. Sec. 226.23(a)(3) (Supp. I 1988) ("Footnote 48 sets forth the material disclosures which must be provided before the rescission period can begin to run.... Failure to give the other required disclosures does not prevent the running of the rescission period, although that failure may result in civil liability or administrative sanctions.").
 
 
 36
 In an attempt to circumvent the language of Sec. 226.18, Smith argues that the disclosure of the finance charges and the disclosure of the itemization of the amount financed are in reality indistinguishable as the former merely requires disclosure of the sum while the latter requires disclosure of the parts. Thus, Smith argues, it is anomalous to treat a breach of one of the disclosure requirements differently from the other.
 
 
 37
 While Smith's position is superficially attractive, it is analytically flawed. The Federal Reserve Board in promulgating Sec. 226.18 created, as separate disclosure requirements, the need to disclose the amount financed and the need to disclose the itemization of the amount financed. Furthermore, as discussed above, the Board decided that different consequences would flow from the failure to adhere to the different disclosure requirements. To accept Smith's argument would be tantamount to a rejection of the Board's decision to promulgate and treat as separate the two disclosure requirements in question. While we do not know for certain the reason for the Board's decision, we cannot find that the choice is "obviously repugnant" to TILA, and it must therefore carry the day. See Ford Motor Credit Co. v. Milhollin, 444 U.S. 555, 560, 100 S.Ct. 790, 794, 63 L.Ed.2d 22 (1980).
 
 
 38
 Accordingly, we conclude, contrary to the district court's ruling, that Fidelity's inaccurate disclosure of the itemization of the "amount given to me directly" does not warrant rescissory relief. Fidelity's inaccurate disclosure does, however, entitle Smith to statutory damages pursuant to 15 U.S.C. Sec. 1640.
 
 
 39
 c. Additional Grounds for Relief
 
 
 40
 Smith proffers two additional grounds that were raised before the district court and which, she contends, this Court could employ to afford her relief. The merits of neither of these grounds were addressed by the district court. While neither of the grounds can enable Smith to collect additional statutory damages under 15 U.S.C. Sec. 1640 because multiple awards are prohibited, these grounds are pertinent insofar as they might provide the predicate for granting rescissory relief.
 
 
 41
 First, Smith asserts that Fidelity violated 12 C.F.R. Sec. 226.18(b) in failing to disclose a $50 document preparation fee as a finance charge. Smith argues that while document preparation fees which are "bona fide and reasonable in amount" are excludable from the finance charge calculus, 12 C.F.R. Sec. 226.4(c)(7)(ii), the charges in question were not so excludable because they were neither bona fide nor reasonable in amount. Second, Smith argues that Fidelity improperly set out the payment schedule of her loan in violation of 12 C.F.R. Sec. 226.18(g).[4] In making this contention Smith acknowledges that a creditor is not liable for a TILA violation which "resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adopted to avoid any such error," 15 U.S.C. Sec. 1640(c), but contends that Fidelity failed to produce evidence that it maintained any procedures designed to avoid error.
 
 
 42
 In addressing these questions, the district court found that the record was insufficient to determine whether the document preparation fee was reasonable and found that a material fact existed as to whether there was a bona fide error in the disclosure of the payment schedule. We agree with the district court's conclusions and accordingly we will remand these claims to the district court for resolution of the factual disputes.
 
 2. Charles and Margaret Coplin
 
 43
 Plaintiffs Charles and Margaret Coplin are the son and daughter-in-law of John Coplin. John Coplin is now deceased. On October 31, 1984, John Coplin, then a 75 year old illiterate, entered into a loan transaction with Fidelity to enable him to purchase a used car from Paschall Auto.
 
 
 44
 Four aspects of this loan transaction are worthy of extended note. First, while John Coplin was in Fidelity's office on October 31, 1984, he endorsed a check dated November 5, 1984, in the amount of $1,761.50 to the order of Paschall Auto; the check had been issued by Fidelity to John Coplin. Second, Fidelity and John Coplin signed a deed conveying Coplin's home to Equitable as security for the loan. Third, Fidelity, in order to obtain a first priority lien on John Coplin's home, lent John Coplin $3,429.50 in order to satisfy then existing liens on his home. In addition, Fidelity lent John Coplin $91.00 which was used by Fidelity to pay filing fees to record properly the satisfaction of prior liens. Finally, Fidelity charged John Coplin $1,072 as a service charge for extending the loan.
 
 
 45
 In December 1985, John Coplin passed away. Plaintiffs Charles and Margaret Coplin, as successors in interest, succeeded to the ownership of John's home. By a letter to Fidelity dated November 3, 1986, Charles and Margaret sought to rescind the October 31, 1984, transaction. Fidelity refused to allow the Coplins to rescind the transaction and thereafter the Coplins filed this action seeking both rescissory relief and statutory damages under TILA.
 
 
 46
 The district court awarded the Coplins both rescissory relief and statutory damages. The district court advanced the following three grounds for its decision. First, the district court found that Fidelity inaccurately itemized the amount financed by misstating on the TILA disclosure form the amount given directly to John Coplin. Second, the district court held that Fidelity violated the letter and the spirit of 15 U.S.C. Sec. 1635 by delivering the loan proceeds check to John Coplin, and receiving his endorsement thereon, prior to the expiration of the three day rescission period. Finally, the district court determined that Fidelity failed to disclose certain finance charges in violation of 12 C.F.R. Sec. 226.23(a)(3) n. 48. Fidelity attacks each of these grounds for liability and they will be dealt with in turn.
 
 
 47
 a. Statute of Limitations
 
 
 48
 We first examine the two relevant periods of limitations under TILA to determine if the Coplins' TILA claims are time barred.[5] First, under 15 U.S.C. Sec. 1635(f) a borrower has three years after the date of consummation of the transaction within which to bring an action for rescission. In this case, the transaction was consummated, i.e., a contractual relationship was created, no earlier than October 31, 1984. See Moor v. Travelers Insurance Co., 784 F.2d 632, 633 (5th Cir.1986) (credit transaction consummated and statute of limitations begins to run from "the moment a contractual relationship is created between a creditor and a customer"). Because this action was filed on April 18, 1987, the Coplins' claim for rescission is timely under the statute.
 
 
 49
 Second, in order to maintain an action for damages under TILA, 15 U.S.C. Sec. 1640, the action must be brought "within one year from the occurrence of the violation." 15 U.S.C. Sec. 1640(e). The Coplins allege several violations which derive from the disclosures made to John Coplin on and around October 31, 1984. Therefore, as to each of these claimed TILA violations, the statute of limitations has run.[6]
 
 
 50
 The Coplins also argue that Fidelity wrongfully refused to allow them to rescind the loan transaction. The Coplins sent Fidelity a notice on November 3, 1986, stating that they wished to rescind the loan transaction in question. Fidelity, however, refused to allow the Coplins to rescind. If the Coplins are correct in their assertion that they were entitled to rescind the instant transaction, then Fidelity is liable for statutory damages based on the Coplins' timely claim that Fidelity wrongfully denied their request to rescind the transaction. The Coplins' entitlement to statutory damages under 15 U.S.C. Sec. 1640 is, therefore, wholly dependent upon, and flows directly from, their entitlement to rescissory relief. We turn to this issue.
 
 
 51
 b. Inaccuracy in Itemization of Amount Financed
 
 
 52
 In the Coplin transaction, Fidelity erroneously disclosed that the amount given to John Coplin directly was $2,833.50 when in fact John Coplin only received $1,761.50. This error, as previously discussed, violated 12 C.F.R. Sec. 226.18(c), requiring a creditor to state accurately the amount of any proceeds distributed directly to the consumer. However, as we noted above, this type of a violation of Sec. 226.18(c) does not support a claim for rescission. This being so, the Coplins are not entitled to any relief based on Fidelity's inaccurate disclosure of the amount given directly to John Coplin. This is so because of our conclusion above that any entitlement to damages would flow from an entitlement to rescissory relief.
 
 
 53
 c. Delay of Creditor's Performance
 
 
 54
 While John Coplin was in Fidelity's office on October 31, 1984, he endorsed a post-dated check to the order of Paschall Auto. Fidelity's act of delivering the post-dated check to John Coplin so that he could endorse the check and return it to Fidelity, prior to the expiration of the three day rescission period, violated 15 U.S.C. Sec. 1635 and 12 C.F.R. Sec. 226.23(c). The question with which this Court must now grapple is whether this violation warrants rescissory relief.
 
 
 55
 According to 15 U.S.C. Sec. 1635(a) an "obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and the rescission forms required under this section together with a statement containing the material disclosures required by this subchapter, whichever is later." This language is effectively parsed by the Official Staff Interpretation of 12 C.F.R. Sec. 226.23(a)(3) which provides in pertinent part:
 
 
 56
 The period within which the consumer may exercise the right to rescind runs for 3 business days from the last of 3 events:
 
 
 57
 * Consummation of the transaction.
 
 
 58
 * Delivery of all the material disclosures.
 
 
 59
 * Delivery to the consumer of the required rescission notice.
 
 
 60
 As the notice of rescission was not sent until November 3, 1986, much later than three days after the consummation of the loan transaction, this Court must determine whether Fidelity's actions in beginning performance of the loan transaction constituted a failure to deliver either the required material disclosures or the required rescission notice to John Coplin. Material disclosures for the purpose of the right to rescind are defined as the "annual percentage rate, the finance charge, the amount financed, the total of payments and the payment schedule." 12 C.F.R. Sec. 226.23(a)(3) n. 48. Because Fidelity's premature performance neither itself constituted a breach of the material disclosure requirement nor directly or indirectly impugned any of the material disclosures, we cannot find a basis for rescission in the material disclosure language.
 
 
 61
 In reaching this conclusion this Court is aware of decisions to the contrary. In re Celona, 90 B.R. 104, 110 (Bankr.E.D.Pa.1988), aff'd, 98 B.R. 705 (E.D.Pa.1989); In re Gurst, 79 B.R. 969, 975 (Bankr.E.D.Pa.1987). In both of these cases the court determined that a violation of Sec. 226.23(c), specifically, the premature disbursal of loan proceeds, was "sufficiently material to accord the Debtors a right to rescind the transaction." In re Celona, 90 B.R. at 110. We find this reasoning unpersuasive as it expands the meaning of "material violations" beyond the parameters clearly set forth by the Board. Given the deference with which we must treat the Board's regulations, we cannot accept the holdings of the Bankruptcy Court in In re Celona and In re Gurst.
 
 
 62
 Based on similar reasoning, we find that Fidelity's actions did not violate the disclosure requirements associated with the notice of rescission. TILA provides at 15 U.S.C. Sec. 1635(a) that "[t]he creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section." Pursuant to this section the Board has promulgated 12 C.F.R. Sec. 226.23(b) which provides:
 
 
 63
 (b) Notice of right to rescind. In a transaction subject to rescission, a creditor shall deliver 2 copies of the notice of the right to rescind to each consumer entitled to rescind. The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:
 
 
 64
 (1) The retention or acquisition of a security interest in the consumer's principal dwelling.
 
 
 65
 (2) The consumer's right to rescind the transaction.
 
 
 66
 (3) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.
 
 
 67
 (4) The effects of rescission, as described in paragraph (d) of this section.
 
 
 68
 (5) The date the rescission period expires.
 
 
 69
 The premature performance in this case, while a violation of Sec. 226.23(c), is most certainly not a violation of Sec. 226.23(b). The two subsections, while adjacent in the C.F.R., are separate with a violation of only Sec. 226.23(b) extending the rescissory period. Thus, the cases cited by the Coplins, Gill v. Mid-Penn Consumer Discount Co., 671 F.Supp. 1021 (E.D.Pa.1987), aff'd, 853 F.2d 917 (3d Cir.1988) and In re Tucker, 74 B.R. 923 (Bankr.E.D.Pa.1987) in which violations of Sec. 226.23(b) were alleged and proven are unhelpful in the instant context.
 
 
 70
 The Coplins rely on Curry v. Fidelity Discount Co., 656 F.Supp. 1129 (E.D.Pa.1987) to support their position. In Curry the borrower, on the day the transaction was consummated, signed both a post-dated certificate or confirmation that the transaction had not been rescinded and a post-dated check for the loan proceeds. On these facts the court concluded that the borrower was entitled to rescission because the creditors "failed in their legal obligation to provide clear notice to the plaintiff of the rescission rights in direct violation of Sec. 1635(a)." Id. at 1132.
 
 
 71
 While this reasoning is not unsound, we are not persuaded that it applies to the undisputed facts of the instant case. The requirements found in Sec. 226.23(b) all pertain to disclosures which must be provided within the written notice containing the borrower's right to rescind the transaction. Although there may be a case in which the creditor's acts or words effectively negate the written notice provided to a borrower, we cannot conclude that Fidelity's act of issuing the proceeds check to John Coplin, and obtaining John Coplin's signature thereon, rendered the disclosures made pursuant to 12 C.F.R. Sec. 226.23(b) a nullity.
 
 
 72
 Accordingly, the Coplins are not entitled to rescissory relief based on Fidelity's premature performance in violation of 12 C.F.R. Sec. 226.23(c).
 
 
 73
 d. Undisclosed Finance Charges
 
 
 74
 The failure to disclose accurately the finance charge is a material violation of TILA entitling the borrower to rescind the loan transaction. 12 C.F.R. Sec. 226.23(a)(3) n. 48. The Coplins contend that Fidelity inaccurately disclosed the finance charge in that Fidelity failed to include in the finance charge calculus tax and mortgage debts which were paid out of the loan proceeds as well as certain document preparation, appraisal and credit report charges.[7]
 
 
 75
 The district court found as fact that Fidelity "required Mr. Coplin to satisfy a number of obligations which were prior liens on his property ... as follows
 
 198384 delinquent real estate taxes $ 521.14
 
 76
 Germantown Savings Bank 865.13
 
 
 77
 Fleet Consumer Discount Company 362.09
 
 
 78
 Central Credit 1,681.14"
 
 
 79
 These liens were satisfied by monies lent by Fidelity to John Coplin as part of the transaction in issue. The Coplins claim that the monies lent to satisfy the prior liens were finance charges in that they were charges imposed directly by Fidelity as an incident to the extension of credit. 15 U.S.C. Sec. 1635(a). Thus, the argument continues, because these finance charges were not disclosed as such, the Coplins are entitled to rescissory relief and statutory damages. 15 U.S.C. Sec. 1635; 12 C.F.R. Sec. 226.23(a)(3) n. 48; 15 U.S.C. Sec. 1640.
 
 
 80
 The question presented to this Court is whether monies lent to the debtor to satisfy the debtor's previously owing taxes and prior mortgages are charges imposed directly or indirectly by Fidelity as an incident to the extension of credit as those terms are defined by statute and applicable regulation. As with all questions of statutory interpretation, our analysis begins with the language of the statute. TILA provides as follows:
 
 
 81
 (a) Except as otherwise provided in this section, the amount of the finance charge in connection with any consumer credit transaction shall be determined as the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit. The finance charge does not include charges of a type payable in a comparable cash transaction. Examples of charges which are included in the finance charge include any of the following types of charges which are applicable:
 
 
 82
 (1) Interest, time price differential, and any amount payable under a point, discount, or other system of additional charges.
 
 
 83
 (2) Service or carrying charge.
 
 
 84
 (3) Loan fee, finder's fee, or similar charge.
 
 
 85
 (4) Fee for an investigation or credit report.
 
 
 86
 (5) Premium or other charge for any guarantee or insurance protecting the creditor against the obligor's default or other credit loss.
 
 
 87
 While the statutory language "charges ... imposed directly or indirectly by the creditor as an incident to the extension of credit" is extremely broad, this language is not unlimited. This is demonstrated by the examples of finance charges listed in conjunction with it. Examining this list, we are left with the firm impression that prior liens are not within the definition of finance charge as that phrase was used by Congress.
 
 
 88
 Our conclusion is reinforced when we examine both 12 C.F.R. Sec. 226.4(b) and 12 C.F.R. Sec. 226.20(a). It is provided at Sec. 226.4(b):
 
 
 89
 (b) Examples of finance charge. The finance charge includes the following types of charges, except for charges specifically excluded by paragraphs (c) through (e) of this section:
 
 
 90
 (1) Interest, time price differential, and any amount payable under an add-on or discount system of additional charges.
 
 
 91
 (2) Service, transaction, activity, and carrying charges, including any charge imposed on a checking or other transaction account to the extent that the charge exceeds the charge for the similar account without a credit failure.
 
 
 92
 (3) Points, loan fees, assumption fees, finder's fees, and similar charges.
 
 
 93
 (4) Appraisal, investigation, and credit report fees.
 
 
 94
 (5) Premiums or other charges for any guarantee or insurance protecting the creditor against the consumer's default or other credit loss.
 
 
 95
 (6) Charges imposed on a creditor by another person for purchasing or accepting a consumer's obligation, if the consumer is required to pay the charges in cash, as an addition to the obligation, or as a deduction from the proceeds of the obligation.
 
 
 96
 (7) Premiums or other charges for credit life, accident, health, or loss of income insurance, written in connection with a credit transaction.
 
 
 97
 (8) Premiums or other charges for insurance against loss or damage of property, or against liability arising out of the ownership or use of property, written in connection with a credit transaction.
 
 
 98
 (9) Discounts for the purpose of inducing payment by a means other than the use of credit.
 
 
 99
 As the charges in question do not resemble any of the types of "finance charges" listed in the applicable regulation, the reasonable inference is that such charges are not "finance charges."
 
 
 100
 This inference is further supported by the language of Sec. 226.20(a), which provides in pertinent part:
 
 
 101
 (a) Refinancing. A refinancing occurs when an existing obligation that was subject to this subpart is satisfied and replaced by a new obligation undertaken by the same consumer. A refinancing is a new transaction requiring new disclosures to the consumer. The new finance charge shall include any unearned portion of the old finance charge that is not credited to the existing obligation.
 
 
 102
 The necessary implication from the inclusion of the unearned portion of the old finance charge within the new finance charge--without any mention of the prior debt being part of the new finance charge--is that refinanced debts are not "finance charges" within the meaning of TILA.
 
 
 103
 In rebuttal, the Coplins argue that the purpose of TILA to promote the informed use of credit is ill served if the taxes and prior mortgages are not classified as finance charges. This argument lacks a basis in reality. In holding that Fidelity did not have to include the prior debts within the finance charge calculus, this Court is not allowing Fidelity to avoid disclosure of the charges. In fact, each of the charges was accurately disclosed on the TILA disclosure form in the section entitled "itemization of amount financed."[8]
 
 
 104
 Accordingly, we hold that the district court erred in finding that the unpaid taxes and unpaid mortgages were finance charges within the meaning of TILA.
 
 
 105
 e. Obtaining Unrecorded Deed
 
 
 106
 In the Coplin transaction, Fidelity had John Coplin sign a deed conveying his home to Equitable, Fidelity's parent corporation. This deed, however, was never recorded. On the face of the TILA disclosure statement it was noted: "Security: I am giving you a security interest in my real estate." Moreover, on the Notice of Right to Cancel given to and signed by John Coplin, it was stated: "You are entering into a transaction that will result in a (mortgage/lien/security interest) (on/in) your home."
 
 
 107
 Fidelity argues that whatever security interest, if any, can be said to have arisen by the execution of the deed by John Coplin to Equitable, such security interest was adequately disclosed. The Coplins disagree and contend that the above statements were insufficient to meet the requirements that the "retention or acquisition of a security interest" and the "effects of rescission" be clearly and conspicuously disclosed. 12 C.F.R. Sec. 226.23(b)(1), (4). The Coplins argue that the disclosures do not indicate the full nature of the security interest taken by Fidelity but only disclose that the transaction would result in a mortgage on Mr. Coplin's home.
 
 
 108
 We find the Coplins' position without merit. Both the TILA disclosure form and the Notice of Right to Cancel indicated clearly and conspicuously that Fidelity was taking a security interest in Mr. Coplin's residence. Indeed, these disclosures nearly mirror those found on the model forms which have been drafted by the Board. See 12 C.F.R. Sec. 226, App. H (H-1, H-8). Therefore, Fidelity accurately disclosed to John Coplin that a security interest was taken in Mr. Coplin's home.[9]
 
 
 109
 Thus, we conclude that on the factual record before this Court, the Coplins were improperly awarded summary judgment on their claims for both statutory damages and rescissory relief.
 
 III. CONCLUSION
 
 110
 The district court's order, insofar as it granted summary judgment to these plaintiffs on their TILA claims will be affirmed except as to Smith's claim for rescissory relief and the Coplins' claim for rescissory relief and statutory damages, which will be reversed and remanded for further proceedings consistent with this opinion.
 
 
 111
 Each party shall bear its own costs.
 
 
 
 *
 Since the date of oral argument, Judge Seitz has taken senior status
 
 
 [1]
 Gloria Young and Tito Manor were also plaintiffs but have been dismissed on appeal by stipulation
 
 
 [2]
 In an unchallenged affidavit of Sarah Baylis, an employee of Fidelity, Ms. Baylis stated: "In connection with a loan made by Fidelity to Annabelle Smith, I attempted to obtain a release of a mortgage to Troy Acceptance Corporation ("Troy"). Troy was no longer in business, but I was able to locate Mrs. S. Ginsberg, who was the widow of the owner of Troy. Although she did not assert that any money was owed to Troy on the mortgage, she refused to sign any release of the mortgage. Since I could not locate any other individual with the authority to act on behalf of Troy, I was unable to obtain a signed release of the Troy mortgage."
 
 
 [3]
 The fact that the term "material disclosures" is defined in a footnote rather than in text has no legal significance. Section 226.4(b)(4) of Regulation Z provides that "[f]ootnotes have the same legal effect as the text of the regulation."
 
 
 [4]
 Section 226.18(g) of 12 C.F.R. provides that a creditor shall disclose the "number, amount and timing of payments scheduled to repay the obligation."
 
 
 [5]
 While the district court did not address this question, this Court's review of the record reveals that Fidelity properly raised the limitations issue
 
 
 [6]
 The Coplins have not argued that the statute of limitations should be equitably tolled and we therefore have not addressed the issue
 
 
 [7]
 To the extent that the finance charge is inaccurately disclosed, the annual percentage rate disclosure may become inaccurate. Such an inaccuracy is a material violation of TILA entitling the borrower to rescissory relief. 12 C.F.R. Sec. 226.23(a)(3) n. 48
 
 
 [8]
 Before the district court, the Coplins argued that the fees charged by Fidelity for document preparation, an appraisal and a credit report were not bona fide and reasonable. The district court found that the record was insufficient to determine whether the fees that Fidelity charged the Coplins were bona fide and reasonable. As we decided with respect to the Smith transaction, these claims present disputed issues of material fact and should be resolved by the district court in the first instance
 Having found no inaccuracy in the disclosure of the finance charge on the current record, we do not reach the Coplins' contention that inaccurate disclosures in the finance charges rendered the disclosure of the annual percentage rate inaccurate.
 
 
 [9]
 The Coplins also allege that Fidelity unlawfully had John Coplin sign a Certificate confirming the fact that he had not rescinded the loan prior to the expiration of the three day rescission period. The Coplins, however, acknowledge that the question of when John Coplin signed the Certificate is in dispute. They, therefore, concede, that this issue must be decided by the district court in the first instance