Donald J. BROPHY and Joan
B. Brophy, Plaintiffs,

v.

CHASE MANHATTAN MORTGAGE CO.
and William Bowen, Defendants.

Civil Action No. 95–7388.

United States District Court,
E.D. Pennsylvania.

Dec. 5, 1996.

Anthony L. Cianfrani, Philadelphia, PA, for Plaintiffs.

Alan C. Gershenson, Ann E. Kim, Philadelphia, PA, for Defendants.

## MEMORANDUM

ANITA B. BRODY, District Judge.

Before me is defendants' Motion for Summary Judgment. Plaintiffs Donald Brophy and Joan Brophy ("the Brophys") allege that the defendant Chase Manhattan Mortgage Corporation ("Chase Manhattan") and its agent, defendant William Bowen ("Bowen"), violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C.A. § 2601 *et seq.*, the Truth in Lending Act ("TILA"), 15 U.S.C.A. § 1601 *et seq.*, the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201–1 *et seq.*, and Pennsylvania tort law by misrepresenting the terms and charges of a Veterans Affairs, fixed rate, thirty (30) year mortgage for the purchase of residential real estate. I will grant defendants' Motion for Summary Judgment with respect to the Brophys' claim under RESPA and TILA, and I will dismiss all remaining claims under state law.

### I. Facts

On June 8, 1995, the Brophys applied for a thirty (30) year fixed-rate mortgage from Chase Manhattan to purchase residential real estate. In connection with their application the Brophys were given two documents, one a "Good Faith Estimate" and the other a Regulation Z Disclosure ("Initial Regulation Z Disclosure"). Under "Items Payable in Connection with Loan," the Good Faith Estimate estimated the Loan Origination Fee would be $886.38, which represented one (1) percent of the loan. The Good Faith Estimate showed a zero ($0.00) figure as the amount for the Loan Discount, indicating that none would be payable. Furthermore, under the section entitled, "Items Required by Lender to be Paid in Advance," the Mortgage Insurance Premium was estimated to be $1,738.[1] Good Faith Estimate dated June 8, 1995. On June 12, 1995, the Brophys signed the Good Faith Estimate and the

---

1. Correspondingly, the Initial Regulation Z Disclosure listed the sum of $886.38 for the item designated "Loan Fee Paid by Buyer" and the sum of $1,738 as a charge for "Private Mortgage Insurance/MIP/VA Funding Fee." Initial Regulation Z Disclosure dated June 8, 1995.

Initial Regulation Z Disclosure and returned them to Chase Manhattan.[2]

When the Brophys settled on July 31, 1995, Chase Manhattan gave them a Settlement Statement and a final Regulation Z Disclosure ("Final Regulation Z Disclosure") detailing the actual charges and fees that the Brophys were required to pay. The Settlement Statement listed a Loan Origination Fee of $1,902.02, a Loan Discount of $885.07, and a FA Funding Fee of $2,607. Settlement Statement dated July 31, 1996. In other words, the Loan Origination Fee which was estimated at $886.38 was now $1,902.02; the FA Funding Fee estimated at $1,738 was now $2,607; and the Loan Discount that was estimated at zero ($0.00) was now $885.07.[3] The annual percentage rate, 7.5 percent, did not vary from the time the good faith estimates were made on June 8, 1995, until the time of settlement on July 31, 1995. Good Faith Estimate dated June 8, 1995; Mortgage Note dated July 31, 1995.

## II. Discussion

The Brophys claim that Chase Manhattan and Bowen violated RESPA, TILA, the Pennsylvania Unfair Trade and Consumer Protection Act, and state tort law by misrepresenting the charges they would incur at settlement for the mortgage on their home.

### A. Real Estate Settlement Procedures Act ("RESPA")

■ The Brophys contend that the defendants did not comply with the statutory dis-closure requirements of RESPA because the defendants failed to provide them with a good faith estimate of the charges that they were likely to incur in connection with the settlement of their mortgage. The Brophys claim that the disclosures they received from the defendants were inaccurate and misleading and thereby violated the requirements of 12 U.S.C.A. § 2604(c) of RESPA[4] and the applicable regulation, Regulation X, 24 C.F.R. § 3500.7(c).[5] The defendants respond that the Brophys do not state a claim under RESPA because no private right of action exists under § 2604.

■ The primary source of a private right of action is the text of the statute itself. *American Telephone and Telegraph v. M/V Cape Fear*, 967 F.2d 864, 866 (3d Cir.1992). Section 2614 of RESPA, the only provision of the Act that provides for a private right of action, states:

> Any action pursuant to the provisions of section 2607 or 2608 of this title may be brought in the United States district court or in any other court of competent jurisdiction ...

12 U.S.C.A. § 2614. Thus, § 2614 provides for a private right of action for claims brought under § 2607 (prohibits the giving or accepting of fees, kickbacks, or a portion, percentage, or split of the charges for settlement services with others who did not per-

---

2. The Brophys allege that Bowen, an agent for Chase Manhattan, assured them that the terms of the mortgage were "locked in." Compl. ¶ 18. There is nothing in the evidentiary record, however, to support this.

3. Correspondingly, the Final Regulation Z Disclosure disclosed the sum of $2,787.09 for the "Loan Fee Paid by Buyer" (includes the sum of the Loan Origination Fee and the Loan Discount Fee on the Settlement Statement) and $2,607 for the "Private Mortgage Insurance/MIP/VA Funding Fee." Final Regulation Z Disclosure dated July 31, 1995.

4. Section 2604(c) of RESPA provides:
 Each lender shall include with the booklet a good faith estimate of the amount or range of charges for specific settlement services the borrower is likely to incur in connection with the settlement as prescribed by the Secretary.
 12 U.S.C. § 2604(c) (West 1989).

5. Regulation X, 24 C.F.R. § 3500.7(c) provides in pertinent part:

 **Content of good faith estimate.** A good faith estimate consists of an estimate, as a dollar amount or range, of each charge which:

 \* \* \* \* \* \*

 (2) That the borrower will normally pay or incur at or before settlement based upon common practice in the locality of the mortgaged property. Each such estimate must be made in good faith and bear a reasonable relationship to the charge a borrower is likely to be required to pay at settlement, and must be based upon experience in the locality of the mortgaged property ...
 24 C.F.R. § 3500.7(c) (West Supp.1996).

form those services) and § 2608 (prohibits the seller from requiring the buyer to purchase title insurance from any particular title company) but does not provide for such a right under § 2604, the section the Brophys claim the defendants violated.

 "The plain meaning of legislation should be conclusive, except in 'the rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of the drafters.'" *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989) (citation omitted). "Courts presume that Congress expressed its legislative intent through the ordinary meaning of the words it chose to use, and if the statutory language is unambiguous, the plain meaning of the words ordinarily is regarded as conclusive." *In re TMI,* 67 F.3d 1119, 1123 (3d Cir.1995) (citation omitted). Since the statute specifically provides for a private right of action under specific sections—but not § 2604—a private right of action should not be implied under § 2604. The Honorable Morton A. Brody (no relation to me) in *Campbell v. Machias Savings Bank,* 865 F.Supp. 26, 32 (D.Maine 1994), is the only other judge found to have spoken on this issue and his holding accords with mine.

The legislative history strengthens my plain meaning interpretation of the statute relating to an implied right of action under § 2604. As originally enacted in December 1974, § 2604(c) required lenders to provide to those who filed an application to borrow money to purchase residential real estate with a booklet to help them better understand the nature and costs of real estate settlement services. It read:

> Each lender [who makes federally related mortgage loans] shall provide the booklet described in such subsection to each person from whom it receives an application to borrow money to finance the purchase of residential real estate. Such booklet shall be provided at the time of receipt of such application.

Real Estate Settlement Procedures Act of 1974, Pub.L. No. 93–533, § 5(c) (amended 1976), 88 Stat. 1725, *reprinted in* 1974 U.S.C.C.A.N. 1984, 1986–87. The original legislation also included § 2605 ("Section 6")—now repealed—which required lenders to provide prospective borrowers with an itemized disclosure of each charge arising in connection with a real estate settlement, or if the exact amount was not available, a good faith estimate of that charge. Section 6 also required lenders to provide these advance disclosures or good faith estimates no later than twelve (12) days prior to settlement. If the lender did not comply with these provisions, Section 6(b) provided for an express private right of action against the lender.[6]

---

6. Section 6 stated in pertinent part:

**Advance Disclosure of Settlement Costs**

(a) Any lender agreeing to make a federally related mortgage loan shall provide or cause to be provided to the prospective borrower, to the prospective seller, mortgage loan shall provide or cause to be provided to the prospective borrower, to the prospective seller, and to any officer or agency of the Federal Government proposing to insure, guarantee, supplement, or assist such loan, at the time of the loan commitment, but in no case later than twelve calendar days prior to settlement, upon the standard real estate settlement form develop and prescribed under section 4 [§ 2603], or upon a form developed and prescribed the Secretary specifically for the purposes of this section, and in accordance with regulations prescribed by the Secretary, an itemized disclosure in writing of each charge arising in connection with such settlement ... In the event the exact amount of any such charge is not available, a good faith estimate of such charge may be provided.

(b) If any lender fails to provide a prospective borrower or seller with the disclosure as required by subsection (a), it shall be liable to such borrower or seller, as the case may be, in an amount equal to—

(1) the actual damages involved or $500, whichever is greater, and

(2) in the case of any successful action to enforce the foregoing liability, the court costs of the action together with a reasonable attorney's fee as determined by the court;

except that a lender may not be held liable for a violation in any action brought under this subsection if it shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures adopted to avoid any such error.

\* \* \* \* \* \*

Real Estate Settlement Procedures Act of 1974, Pub.L. No. 93–533, § 6, *reprinted in* 1974 U.S.C.C.A.N. 1984, 1987 (repealed).

Several months after enacting RESPA, Congress determined that the twelve (12) day advance notice provision under Section 6 only further complicated the settlement process instead of simplifying it. H.R.Rep. No. 667, 94th Cong., 1st Sess. 4 (1975), *reprinted in* 1975 U.S.C.C.A.N. 2448, 2451. As a result, in January 1976, Congress repealed Section 6, including the private right of action against lenders who failed to comply with the advance disclosure/good faith estimate provisions. Still intending to promote the objectives it sought with advance disclosures and good faith estimates, Congress amended § 2604 in January 1976. According to the legislative history, Congress amended § 2604 in order that there would be disclosure of good faith estimates of settlement costs in the special information booklet provided to the borrower at the time a written application for a mortgage loan was made. H.R.Rep. No. 667, 94th Cong., 1st Sess. 2 (1975), *reprinted in* 1975 U.S.C.C.A.N. 2448, 2449. This amendment was codified in § 2604(c), the present form of the statute, and contained no express private right of action for a violation of this good faith estimate requirement.

Furthermore, the legislative history reveals that Congress was well aware that it was eliminating a private right of action by repealing Section 6 and amending § 2604. In opposing the above amendments to RESPA, Representative Leonor K. Sullivan of Missouri warned: "[I]t should be noted that in repealing Section 6, the bill eliminates any penalty whatsoever for failing to give information which is, in fact, a 'good faith' estimate." H.R.Rep. No. 667, 94th Cong., 1st Sess. 18 (1975), *reprinted in* 1975 U.S.C.C.A.N. 2448, 2459. Notwithstanding Representative Sullivan's concern, Congress

repealed Section 6, amended § 2604, and as a result, extinguished the private right of action that had initially existed for failure to comply with the advance disclosure/good faith estimate provisions of RESPA. Hence, I conclude that the legislative history indicates that Congress did not intend to create a private right of action under amended § 2604. Therefore, I will grant defendants' Motion for Summary Judgment on the Brophys' claim under RESPA.

## B. Truth in Lending Act ("TILA")

■■■■ The Brophys allege that the defendants' estimates of the costs associated with their mortgage were not made in good faith in violation of 15 U.S.C.A. § 1638 and Regulation Z, 12 C.F.R. §§ 226.17–.19, because the estimates inaccurately and misleadingly understated the actual costs incurred at settlement. Specifically, at settlement, the Loan Origination Fee that was estimated at $886.38 was $1,902.02; the FA Funding Fee (Mortgage Insurance Premium) that was estimated at $1,738 was $2,607; and the Loan Discount that was estimated at zero ($0.00) was $885.07. Despite these numerical discrepancies, the defendants claim that they have complied with the statutory disclosure requirements under TILA because the statute simply requires them to provide an initial disclosure statement and a final disclosure statement—which they did.[7] Defs.' Mot. Summ.J. at 2, 8–9. Accordingly, defendants assert that the Brophys fail to state a claim under TILA and request summary judgment in their favor.

Section 1638(b)(2) of TILA requires lenders in residential mortgage transactions to provide good faith estimates of the financial disclosures required under § 1638(a).[8] It states:

---

7. Actually, TILA did not require the defendants to provide a final disclosure statement. TILA does not require a subsequent disclosure statement unless the estimated annual percentage rate varies by more than ⅛ of one percent in a regular transaction or by more than ¼ of one percent in an irregular transaction, as defined by § 226.22 of the regulations. 12 C.F.R. § 226.19(a)(2). In this case, the annual percentage rate did not change from the time of the estimate until the time of settlement. Hence, no final disclosure was required.

8. Section 1638(a) requires lenders to disclose: (1) creditor's identity; (2) amount financed; (3) consumer's right to obtain written itemization of the amount financed; (4) non-itemized finance charge; (5) annual percentage rate; (6) total of payments; (7) total sale price, if applicable; (8) descriptive explanations of aforementioned terms; (9) statement of what property a security interest has been taken in, if any; (10) amount of late payment charges; (11) indication of whether consumer is entitled to rebate of finance charge under certain circumstances; (12) referral to

In the case of a residential mortgage transaction ... good faith estimates of the disclosures required under subsection (a) of this section shall be made in accordance with regulations of the Board under section 1631(c) of this title before the credit is extended, or shall be delivered or placed in the mail not later than three business days after the creditor receives the consumer's written application, whichever is earlier. If the disclosure statement furnished within three days of the written application contains an annual percentage rate which is subsequently rendered inaccurate within the meaning of subsection 1606(c) [9] of this title, the creditor shall furnish another statement at the time of settlement or consummation.

15 U.S.C.A. § 1638(b)(2) (West 1982). The corresponding regulation, Regulation Z, § 226.19, provides in pertinent part:

> **(a) Residential mortgage transactions subject to RESPA—(1) Time of disclosures.** In a residential mortgage transaction subject to the Real Estate Settlement Procedures Act ... the creditor shall make good faith estimates of the disclosures required by § 226.18 before consummation, or shall deliver or place them in the mail not later than three business days after the creditor receives the consumer's written application, whichever is earlier.

12 C.F.R. § 226.19(a)(1) (West Supp.1996).

Section 1631(c) of TILA authorizes the Board of Governors of the Federal Reserve System, the Board authorized to prescribe regulations under § 1604 of the Act, to allow estimates to satisfy the statutory disclosure requirements of the statute. It states, in pertinent part:

> The Board may provide by regulation that any portion of the information required to be disclosed by this subchapter may be given in the form of estimates where the

provider of such information is not in a position to know exact information.

15 U.S.C.A. § 1631(c) (West 1996). The corresponding regulation provides:

> If any information necessary for an accurate disclosure is unknown to the creditor, it shall make the disclosure based on the best information reasonably available and shall state that the disclosure is an estimate.

12 C.F.R. § 226.17(c)(2) (West 1982).

Rule 56(e) provides that the non-moving party to a motion for summary judgment "must set forth specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e). No genuine issue for trial exists unless there is sufficient evidence supporting the non-movant's case such that a jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). "If the evidence [produced by the non-moving party] is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50, 106 S.Ct. at 2511. The critical question is whether "a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient." *Id.* at 252, 106 S.Ct. at 2512. All justifiable inferences should be drawn in the non-movant's favor. *Id.* at 255, 106 S.Ct. at 2513–14.

In the present case, the only evidence presented in support of summary judgment was the estimate required under § 1638(b)(2), the settlement statement, and the corresponding Regulation Z disclosures. No depositions, affidavits, or other testimony were submitted by either side. Without more, the Brophys argue that a trier of fact may draw an inference from the disparities between the initial good faith estimates and the final settlement

---

contract for information regarding nonpayment, default, right to accelerate maturity of debt, and prepayment rebates and penalties; (13) in residential mortgage transactions, a statement indicating whether a subsequent purchaser or assignee may assume the debt obligation on its original terms. 15 U.S.C.A. § 1638(a) (West 1982).

**9.** Section 1606(c) concerns the degree to which the annual percentage rate can vary from the time of disclosure and yet still comply with the Act.

figures that the defendants' initial estimates were not made in good faith. I disagree.

The evidence submitted is uncontradicted: both parties agree that the estimates, settlement statement, and Regulation Z Disclosures are what they claim to be. The dispute centers around the interpretation of the discrepancies within these documents. Although the Brophys assert that the differences between the estimates and the settlement statement stem from the fact that the estimates were not made in good faith, they have proffered no evidence specifically setting forth this claim. In actuality, there are a plethora of possible reasons—not involving defendants' lack of good faith—as to why the estimated figures fluctuated by the time of settlement. While the Brophys insist that an inference of the defendants' lack of good faith can be drawn from the evidence before me sufficient to withstand summary judgment, I cannot take that leap. "The judge's inquiry ... unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict." *Id.* Without depositions, affidavits, or other evidence of that nature detailing ʟ ecific underlying facts of this dispute, an inference that the defendants estimates were not made in good faith cannot be justifiably drawn. The Brophys have not even submitted an affidavit from a professional in the residential mortgage industry opining on the significance of the disparities between the estimates and the settlement statement and how that might indicate a lack of good faith. Based on the limited evidence before me, a finding by the jury that the defendants' estimates were not made in good faith would be mere speculation.[10]

The statutory framework of TILA also suggests that a discrepancy between the estimates and the final settlement figures—without more—is insufficient to draw an inference that the defendants' estimates were not made in good faith. Under TILA, the nature of the disclosures required in non-residential mortgage transactions fundamentally differs from that of the disclosures required in the residential mortgage context. In non-residential mortgage transactions TILA directs:

> [T]he disclosures required under [§ 1638(a) ] shall be made before the credit is extended.

15 U.S.C.A. § 1638(b)(1) (West 1982). In contrast, in residential mortgage contexts, TILA requires:

> In the case of a residential mortgage transaction, ... good faith estimates of the disclosures required under [§ 1638(a) ] shall be made in accordance with [Regulation Z] ... before the credit is extended.

15 U.S.C.A. § 1638(b)(2) (West 1982). Thus, in residential mortgage contexts, TILA requires estimates—not actual disclosures—of the items listed in § 1638(a). The fact that § 1638(b)(2) only requires estimates of the disclosures presumes that the final figures might change before settlement. In fact, § 1631(c) explicitly states that estimates will be given "where the provider of such information is not in a position to know exact information." 15 U.S.C.A. § 1631(c). Apparently, then, the statute makes allowances for variance between estimates and final disclosures in residential mortgage transactions. Therefore, I cannot draw the inference that the defendants' estimates were not made in good faith solely because the estimates vary from the settlement disclosures.

■■■ Along similar lines, the strict liability regime created under the statute also suggests that the Brophys cannot legitimately draw an inference from the discrepancies between the estimates and the settlement statement that the defendants' estimates were not made in good faith. TILA is a strict liability statute liberally construed in favor of consumers. *Smith v. Fidelity Consumer Discount Co.*, 898 F.2d 896, 898 (3d Cir.1990). A creditor who fails to comply with the Act in any respect is liable to the consumer under the statute. *Id.* "[O]nce the court finds a violation, no matter how technical, it has no discretion with respect to

---

10. If the Brophys' claim were based upon an attack of how the estimates were produced under Regulation Z—although it does not seem to be— then it might survive summary judgment by showing that the defendants failed to base their estimates upon "the best information reasonably available." 12 C.F.R. § 226.17(c)(2). The Brophys, however, have proffered no evidence to show this either.

886

[imposing] liability." *Id.* (quoting *Grant v. Imperial Motors,* 539 F.2d 506, 510 (5th Cir. 1976)). Therefore, except in the residential mortgage context, any discrepancy between an actual disclosure and what a borrower is later charged ordinarily constitutes a violation under the Act.[11] *See McGowan v. King, Inc.,* 569 F.2d 845, 848 (5th Cir.1978) (understatement of "deferred payment price" by $3.52 constituted violation of TILA); *Grant v. Imperial Motors,* 539 F.2d 506, 510 (5th Cir.1976) (finance charge understated by $16.00 constitutes a violation of TILA). In contrast, in residential mortgage transactions, good faith estimates are required instead of actual disclosures. Estimates are given when a creditor "is not in a position to know exact information," 15 U.S.C.A. § 1631(c), are and "based upon the best information reasonably available." 12 C.F.R. § 226.17(c)(2). Hence, the fact that an estimate fluctuates by the time of settlement does not itself constitute a violation of the Act. Thus, unlike disclosures in non-residential mortgage contexts, the good faith estimates can vary from the time they are revealed until settlement without giving rise to a statutory violation of the Act. Hence, fluctuation of an estimate alone does not invoke liability under the Act. This further supports my conclusion that the necessary inference cannot be drawn that the defendants' estimates failed to be made in good faith on the basis of a change in the estimate alone.

For these reasons, I find that the Brophys' proffer of the documents alone fails to provide the basis for a justifiable inference that the defendants estimates were not made in good faith. Accordingly, I will grant summary judgment in favor of defendants on this claim.

### C. Supplemental State Law Claims

 The Brophys also allege violations under the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201–1 *et seq.,* and state tort law for the misleading and inaccurate representations concerning the amount and variability of the loan fees. As I am granting defendants' Motion for Summary Judgment on plaintiffs'

claims under RESPA and TILA, there are no remaining federal questions before this Court. As a result, I dismiss without prejudice all of plaintiffs' supplemental state law claims.

11. Sections 1640(b), (c), (f) enumerate statutory defenses to violations of the Act.