**In re Mary and Herbert WRIGHT.**

**Mary and Herbert WRIGHT**

v.

**MID–PENN CONSUMER DISCOUNT COMPANY.**

Civ. A. Nos. 91–4474, 91–4477.

United States District Court, E.D. Pennsylvania.

Nov. 21, 1991.

David A. Searles, Philadelphia, Pa., for Mary and Herbert Wright.

Arthur J. Matusow, Philadelphia, Pa., for Mid–Penn Consumer Discount Co.

Edward Sparkman, trustee.

RAYMOND J. BRODERICK, District Judge.

This is an appeal from the bankruptcy court in a truth-in-lending matter. For the reasons set forth below, this Court will affirm the determination of the bankruptcy court rescinding the 1989 loan transaction between lender Mid–Penn and debtors Mary and Herbert Wright and awarding to the Wrights statutory penalties of $1,000 plus reasonable attorneys' fees for Mid–Penn's failure to honor the Wrights' valid rescission of that loan. Further, we will affirm the bankruptcy court's determination that the 1990 loan was not a rescindable transaction.

## I. PROCEDURAL HISTORY

Mary and Herbert Wright are consumer debtors who filed a joint petition for relief under Chapter 13 of the Bankruptcy Code on January 10, 1991. Mid–Penn Consumer Discount Company ("Mid–Penn") is a consumer loan company with whom the Wrights entered into a series of loan transactions in 1986, 1987, 1989, and 1990, for which Mid–Penn took security interests in their home. After the first transaction, each loan was used to pay off the preceding loan and advance additional money.

On January 14, 1991, the Wrights commenced a core adversary proceeding against Mid–Penn to determine the extent of the lien Mid–Penn held on their home. The Wrights' complaint sought to eliminate Mid–Penn's lien based on violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, committed by Mid–Penn in connection with the four loan transactions, and based on Mid–Penn's failure to honor the Wrights' rescission of the 1989 and 1990 transactions only.

Before this Court is the appeal of the Wrights of the bankruptcy court's denial of rescission and statutory damages under TILA as to the 1990 loan, and the cross appeal of Mid–Penn of the bankruptcy court's award to the Wrights of rescission and statutory damages under TILA of the 1989 loan.

As to the 1989 loan, the bankruptcy court found that the Wrights had validly rescinded that loan, and that Mid–Penn's refusal to act upon that valid rescission was an actionable TILA violation. It therefore awarded the Wrights $1000.00 in statutory damages and reasonable attorneys' fees.

As to the 1990 loan, the bankruptcy court determined that it was not a rescindable transaction. It therefore denied the Wrights' claims for statutory penalties for that transaction.

## II. DISCUSSION

This Court has appellate jurisdiction over decisions of the bankruptcy court by virtue of 28 U.S.C. § 158(a). We review the bankruptcy court's findings of fact for clear error. Conclusions of law are subject to plenary review. *Brown v. Pennsylvania State Employees Credit Union*, 851 F.2d 81, 84 (3d Cir.1988).

The Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, was enacted in 1968 to promote the informed use of consumer credit. *See* 15 U.S.C. § 1604(a). It is well-settled that TILA is a remedial statute designed to aid unsophisticated consumers, so that consumers are not easily misled as to the total costs of financing. TILA mandates that certain disclosures must be made in finance agreements and how they are to be made, and that enforcement of its standards is to

be achieved in part by a system of strict liability in favor of the consumers. *Thomka v. A.Z. Chevrolet, Inc.*, 619 F.2d 246, 248 (3d Cir.1980). It is to be liberally construed in favor of consumers, with a creditor who fails to comply with TILA in any respect becoming liable to the consumer under the statute regardless of the nature of the violation or the creditor's intent. Having found a violation "no matter how technical," a court has no discretion with respect to liability. *Smith v. Fidelity Consumer Discount Co.*, 898 F.2d 896, 898 (3d Cir.1990).

█ Regulations for implementing TILA, as promulgated by the Federal Reserve Board pursuant to 15 U.S.C. § 1604(a), are known collectively as Regulation Z, and are found at 12 C.F.R. § 226.1 *et seq.* Regulation Z "absent some obvious repugnance to the statute should be accepted by the courts, as should the Board's interpretation of its own regulation." *Anderson Brothers Ford v. Valencia*, 452 U.S. 205, 219, 101 S.Ct. 2266, 2274, 68 L.Ed.2d 783 (1981). The Board has also issued Official Staff Commentary (hereinafter "Commentary"). The Commentary is the vehicle by which the staff of the Board now issues official staff opinions, and as such, must be accorded the same deference as Regulation Z. RALPH J. ROHNER, THE LAW OF TRUTH IN LENDING, 2.01[2][c] (1989).

█ A single violation of TILA gives rise to full liability for statutory damages. Damages include actual damages incurred by the debtor plus a civil penalty equal to a minimum of $100.00, or double the finance charge up to a maximum of $1,000.00, plus costs and reasonable attorneys' fees. 15 U.S.C. § 1640(a)(1), (2)(A)(i) and (3). An action under this section must be brought within one year. 15 U.S.C. § 1640(e). Multiple violations of TILA in a single loan transaction do not yield multiple civil penalties but result in only a single penalty. 15 U.S.C. § 1640(g).

█ In addition, when a creditor takes a security interest against property which is the principal dwelling of the consumer, the consumer has the right to rescind the transaction until the later of (1) midnight of the third day following the transaction or (2) the date on which the creditor delivers to the consumer the notice of the right to rescission and the material disclosures that TILA requires. 15 U.S.C. § 1635(a). If the required notice or material disclosures are not delivered, the right to rescind expires the later of three events: three years after consummation, the transfer of all of the consumer's interest in the property, or the sale of the property. 12 C.F.R. § 226.-23(a)(3).

█ Exercise of the right to rescind under 15 U.S.C. § 1635 results in discharge of the consumer's liability for any finance or other charge, with any security interest on the consumer's principal dwelling taken in conjunction with the extension of credit becoming void. Within 20 days, the creditor must return any money or property given as earnest money, downpayment, or otherwise, and take any action necessary and appropriate to reflect termination of the security interest created by the transaction. Upon performance of these obligations of the creditor, the consumer must tender the property obtained or its reasonable value. 15 U.S.C. § 1635(b); 12 C.F.R. § 226.23(d).

█ The failure of a lender to properly act on a rescission is a new violation separate and distinct from the disclosure violation that gave rise to the right to rescind. 15 U.S.C. § 1640(g); 15 U.S.C. § 1635(g). Thus, if a consumer asserts its right to rescission within the one year statute of limitations for misdisclosures under § 1640, and the creditor refuses to honor that rescission, the creditor becomes liable for the statutory penalties under § 1640 for both the misdisclosures and for the failure to rescind, up to a maximum of $2000. In addition, under § 1635, the consumer is relieved of liability for finance and other charges, and the security interest taken on the consumer's principal dwelling becomes void. If the consumer asserts its right to rescission after the one year statute of limitations for misdisclosures under § 1640 but within the three year limitation under § 1635, and the creditor refuses to

honor that rescission, then the creditor is liable for the statutory penalties under § 1640 only for the failure to rescind, up to a maximum of $1000, and under § 1635, the consumer is relieved of liability for finance and other charges, and the security interest becomes void.

### A. The 1989 Transaction

It is uncontroverted that, for the 1989 transaction, Mid–Penn included the cost of property insurance of $175.68 in the amount financed and not as a finance charge. It is also uncontroverted that Mid–Penn did not provide the mandated disclosures under 15 U.S.C. § 1605(c), which requires:

> (c) Charges or premiums for insurance, written in connection with any consumer credit transaction, against loss of or damage to property or against liability arising out of the ownership or use of property, shall be included in the finance charge unless a clear and specific statement in writing is furnished by the creditor to the person to whom credit is extended, setting forth the cost of the insurance if obtained from or through the creditor, and stating that the person to whom the credit is extended may choose the person through which the insurance is to be obtained.

15 U.S.C. § 1605(c).

Regulation Z, 12 C.F.R. § 226.4(b)(8), expressly states that the disclosed finance charge shall include "[p]remiums or other charges for insurance against loss of or damage to property, or against liability arising out of the ownership or use of property, written in connection with a credit transaction." An exception to this requirement is found in § 226.4(d)(2), which states:

> (2) Premiums for insurance against loss of or damage to property, or against liability arising out of the ownership or use of property, may be excluded from the finance charge if the following conditions are met:

> (i) The insurance coverage may be obtained from a person of the consumer's choice, and this fact is disclosed.

> (ii) If the coverage is obtained from or through the creditor, the premium for the initial term of insurance coverage shall be disclosed. If the term of insurance is less than the term of the transaction, the term of insurance shall also be disclosed. The premium may be disclosed on a unit-cost basis only in open-end transactions, closed-end credit transactions by mail or telephone under § 226.17(g), and certain closed-end credit transactions involving an insurance plan that limits the total amount of indebtedness subject to coverage.

12 C.F.R. § 226.4(d)(2) (footnotes omitted).

In the 1989 loan, since the term of that loan was two years (listed as 24 months on the disclosure statement), Mid–Penn properly disclosed that the term of the property insurance was one year. It also properly disclosed that the cost was $175.68. Although the Wrights had notice, thus, of the term and cost of the property insurance as included in the 1989 loan, Mid–Penn did not disclose that the insurance could be obtained by a provider of the Wrights' choice. Still, Mid–Penn included the cost of the property insurance in the amount financed. This was a clear violation of 15 U.S.C. § 1605(c) and Regulation Z, which require that the cost of property insurance must be included in the finance charge unless a clear statement in writing is given to the consumer advising the consumer that the insurance may be obtained from a provider selected by the consumer.

Under TILA, the amount financed and the finance charge are "material disclosures." 12 C.F.R. § 226.23(a)(3) n. 2.[1] Thus, Mid–Penn's erroneous inclusion of the cost of the property insurance in the amount financed instead of listing it as a finance charge were material violations of TILA, which gave the Wrights the right to rescind the 1989 transaction under 15 U.S.C. § 1635. As a result of rescission, the Wrights were no longer liable for any finance or other charges, and the security

---

**1.** Footnotes have the same legal effect as the     text of the regulation. 12 C.F.R. § 226.2(b)(4).

interest on their home became void. 15 U.S.C. § 1635(b). Furthermore, when Mid–Penn wrongfully refused to honor the Wrights' rescission, this was a violation under 15 U.S.C. § 1640, for which Mid–Penn became liable to the Wrights for a civil penalty equal to a minimum of $100.00, or double the finance charge up to a maximum of $1000.00, plus costs and reasonable attorneys' fees.

We affirm, therefore, the finding of the bankruptcy court that the 1989 loan is rescinded and that the Wrights are awarded a statutory penalty in the amount of $1000.00 plus reasonable attorneys' fees.

### B. The 1990 Transaction

The bankruptcy court determined that the 1990 loan was not a rescindable transaction on the basis of its finding that the Wrights had not shown the existence of material TILA violations in connection with the 1990 transaction. We agree.

Like the 1989 transaction, the 1990 transaction disclosed the term and cost of the property insurance, and included the cost of the property insurance in the amount financed. Unlike the 1989 transaction, however, the disclosure statement for the 1990 loan contained the following notation:

> I/we have the option to choose our fire insurance for my/our dwelling and renewals from either my/our own sources or through Mid–Penn.

1990 Loan Disclosure Statement, Part II.

■ As was heretofore pointed out, 15 U.S.C. § 1605(c) makes it clear that in the event that the consumer is provided with the cost and term of the property insurance and with written notice advising the consumer that the property insurance may be obtained from a provider of the consumer's choice, the lender may place the property insurance in the amount to be financed. Since this was done in connection with the 1990 loan, Mid–Penn had the right to place the premium for the property insurance in the amount to be financed.

Furthermore, the record in this case shows that in connection with the 1990 loan, a detailed disclosure statement was given to the Wrights which showed that the amount to be financed included $175.68, the amount of the property insurance premium for one year. There was, thus, no material failure to disclose in the 1990 transaction.

■ The Wrights claim that a material TILA violation occurred in the 1990 loan transaction on the ground that the disclosure statement of the amount to be financed included $175.68 that was the cost of the property insurance for 1989. The Wrights, however, overlook the fact that the 1989 loan transaction has been rescinded. The result of this rescission is that the balance due in connection with the 1989 loan transaction must be recalculated, with the premium for the 1989 property insurance and the interest paid thereon removed from the balance of the loan since, as heretofore pointed out, under the rescission of the 1989 loan, the Wrights are no longer liable for the finance charges connected with the 1989 loan.

To allow rescission of the 1990 loan and to find Mid–Penn liable for additional statutory penalties would impose penalties twice for the material violation of TILA that was found in connection with the 1989 loan. That this is so is obvious when one considers that a simple recalculation of the payoff figure of the 1989 loan based on amounts determined after rescission of that loan will result in a determination of the accurate balance due on the 1989 transaction.

Although a single violation of TILA gives rise to full liability for statutory damages, 15 U.S.C. § 1640(a), multiple violations of TILA in the course of a single loan do not yield multiple penalties but result in only a single penalty. 15 U.S.C. § 1640(g). Congress never intended that a material violation in one year giving the consumer the right to rescind would require the imposition of statutory penalties in a subsequent year where, as in this case, the lender corrected its disclosure failure in the subsequent year.

The Wrights' claim for rescission and statutory damages in connection with the 1990 transaction appear to be based on an opinion of another bankruptcy judge in *In*

*re Steinbrecher,* 110 B.R. 155 (Bkrtcy., E.D.Pa.1990). However, there is a material difference between the facts in *Steinbrecher* and the facts in this case. In *Steinbrecher,* the creditor never corrected its failure to disclose the consumer's option to place their own property insurance. In this case, as the record shows, Mid–Penn did. It is the opinion of this Court that the factual determinations made by the bankruptcy judge in this case in connection with the 1990 transaction are correct and should be affirmed.