**Anthony BRODO,**

v.

**BANKERS TRUST CO., Trustee.**

**Civ. A. No. 93–1858.**

United States District Court, E.D. Pennsylvania.

March 25, 1994.

As Amended April 6, 1994.

Philip A. Bertocci, Philadelphia, PA, for plaintiff.

Susan Verbonitz, Philadelphia, PA, for defendant.

*MEMORANDUM*

BARTLE, District Judge.

Plaintiff, Anthony Brodo ("Brodo"), instituted this action against Bankers Trust Co. ("Bankers") pursuant to the Truth–In–Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.* Plaintiff has also alleged violations of the Pennsylvania Loan Interest and Protection Law, 41 Pa.Stat.Ann. § 101 *et seq.*, and the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa.Stat.Ann. § 201-1 *et seq.* Plaintiff predicates subject matter jurisdiction on 28 U.S.C. §§ 1331 and 1337.[1] Before the court are plaintiff's motion for partial summary judgment and defendant's motion for summary judgment.

Brodo owns a house in Philadelphia, Pennsylvania. In the spring of 1990, he applied to Champion Mortgage Company ("Champion") for a loan of $10,000 to pay for home repairs. Champion processed his application as a request for a loan secured by a first mortgage, and agreed to lend him funds only if all his pre-existing debts were paid off. The parties dispute whether Brodo knew prior to the settlement date, May 4, 1990, that the loan amount would include funds sufficient to eliminate his pre-existing debts and that he would be required to pay settlement costs. Based on its appraisal of plaintiff's home and supporting documentation, Champion determined that he was eligible for a loan of $43,500.

On May 4, 1990, Brodo attended the settlement. At that time, he executed loan documents including a note and mortgage, a loan settlement statement, TILA disclosure statements, a notice of his right to cancel, and a closing statement. Although only $3,747.40 was actually disbursed to Brodo, his loan totaled $43,500 at an interest rate of 13.625% per annum. Champion used the remaining funds to pay his previous debts, including first and second mortgages, real estate taxes, municipal claims, and unsecured credit card debts.

At settlement, Champion required plaintiff to pay $450 in attorney's fees to Stern & Hendler, a law firm Champion had retained. Stern & Hendler prepared loan documents, security documents and credit reports regarding plaintiff's loan. It informed plaintiff which documents he would need to bring to the closing. Stern & Hendler also completed the TILA disclosure statement and the TILA itemization of amount financed, checked Champion's calculations on preliminary versions of these forms, and calculated the number of payments, the date on which the payments should begin, and the amount to be charged for late payments.

Near the end of May, 1990, Champion assigned the mortgage on plaintiff's home to American Financial Corporation. In July, 1991, American Financial Corporation assigned the note and the mortgage to Bankers as trustee under a servicing agreement.

Brodo made loan payments until July 8, 1992. In January of 1993, Bankers filed suit against him in the Court of Common Pleas of Philadelphia County to collect the balance due on the loan. The following month, plaintiff sent a notice of rescission to the defendant. Bankers never responded to the notice. This lawsuit followed.

The standards for summary judgment are well known. A moving party may obtain summary judgment by establishing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). An issue is "genuine" only if there is sufficient evidence for a jury to find in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute is "material" if it might affect the outcome of the action under the governing law. *Id.* at 248, 106 S.Ct. at 2510. In order for the court to determine whether the standards for summary judgment have been met, the evidence must be viewed in the light most favorable to the non-moving party. *Mellon Bank Corp. v.*

---

1. These sections provide in pertinent part:
 The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States. 28 U.S.C. § 1331.

 The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce.... 28 U.S.C. § 1337(a).

*First Union Real Estate Equity & Mortg. Invest.*, 951 F.2d 1399, 1404 (3d Cir.1991).

TILA is a consumer protection statute designed to ensure "a meaningful disclosure of credit terms" to applicants for credit to alleviate the unequal bargaining power and sophistication between consumers and lenders. 15 U.S.C. § 1601(a); *Thomka v. A.Z. Chevrolet, Inc.*, 619 F.2d 246, 248 (3d Cir.1980). The statute imposes strict liability upon lenders which fail to disclose any mandated information, even if the violation is technical and unintended. *Smith v. Fidelity Consumer Discount Co.*, 898 F.2d 896, 898 (3d Cir.1990). TILA is to be liberally construed in favor of the borrower. *Id.* A borrower is not required to prove or even to allege any injury resulting from a TILA violation. *Thomka*, 619 F.2d at 250. Courts should defer to the interpretation of TILA set forth in 12 C.F.R. § 226 ("Regulation Z"), promulgated by the Federal Reserve Board pursuant to expansive authority granted by Congress, "absent some obvious repugnance to the statute." *Smith*, 898 F.2d at 898 (citations omitted.)

When a lender takes a security interest in a borrower's principal dwelling in exchange for credit, TILA permits the borrower to rescind the transaction until three business days after the consummation of the transaction or the delivery of the material disclosures required by the statute, whichever is later. 15 U.S.C. § 1635(a). If the lender does not give the required disclosures, the borrower's right to rescind expires three years after the consummation of the transaction or upon the sale of the property, whichever is first. 15 U.S.C. § 1635(f). Failure to disclose the proper finance charge or amount financed constitutes a material violation which entitles the borrower to rescind the loan. 15 U.S.C. § 1635(a); 12 C.F.R. § 226.-23(a)(3) n. 48; *Smith*, 898 F.2d at 899. A borrower who has a right to rescind against the original lender also has the right to rescind against any assignee. 15 U.S.C. § 1641(c).

The lender's security interest becomes void upon a borrower's rescission, and the borrower is no longer "liable for any finance or other charge." 15 U.S.C. § 1635(b).

Within 20 days of receiving notice of the borrower's intent to rescind, the lender must "return ... any money or property given as earnest money, downpayment, or otherwise, and [must] take any action necessary or appropriate to reflect the termination of any security interest created under the transaction." *Id.* Violation of the lender's obligations under this section constitutes a separate TILA violation. 15 U.S.C. § 1635(g). Plaintiff seeks rescission of the loan, a $1,000 statutory penalty for Bankers' refusal to respond to plaintiff's notice of rescission, and an award of attorney's fees and costs.

Plaintiff's complaint alleges that Champion violated TILA by failing to disclose the proper finance charge for the loan. Plaintiff contends that the disclosed finance charge is incorrect because Champion improperly excluded from the finance charge all, instead of just a portion, of the attorney's fees paid to Stern & Hendler.

Section 1605 of TILA defines the finance charge as "the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit." 15 U.S.C. § 1605(a). TILA requires the following items to be excluded from the computation of the finance charge:

(1) Fees or premiums for title examination, title insurance, or similar purposes.

(2) Fees for preparation of a deed, settlement statement, or other documents.

(3) Escrows for future payments of taxes and insurance.

(4) Fees for notarizing deeds and other documents.

(5) Appraisal fees.

(6) Credit reports.

15 U.S.C. § 1605(e).

The Federal Reserve Board's Official Staff Commentary on Regulation Z ("Commentary") explains that:

[i]f a lump sum is charged for several services and includes a charge that is not excludable, a portion of the total should be allocated to that service and included in the finance charge. A charge for a law-

yer's attendance at the closing ... is excluded from the finance charge if the charge is primarily for services related to items listed in section 226.4(c)(7) (for example, reviewing or completing documents), even if other incidental services, such as explaining various documents or disbursing funds for the parties, are performed. In all cases, charges excluded under section 226.4(c)(7) must be bona fide and reasonable.

Commentary, § 226.4(c)(7).

Plaintiff concedes that his claim that Stern & Hendler's fees were unreasonable is not ripe for summary disposition. Plaintiff also concedes that the fees paid to Stern & Hendler for its preparation of loan documents, security documents, and credit reports regarding plaintiff's loan were properly excluded from the finance charge pursuant to § 1605(e). Plaintiff maintains, however, that attorney fees for informing plaintiff what documents he would need to bring to the closing and for preparing the TILA disclosure statement and the TILA itemization of amount financed should have been allocated to the finance charge.

Bankers contends, on the other hand, that the entire $450 paid to Stern & Hendler is excludable from the finance charge because the services the law firm performed "were either directly related to the Loan or 'incident' to those items which are excludable." Bankers admits that Stern & Hendler verified calculations made by Champion and actually filled out the TILA disclosure statements. Nevertheless, it argues that "this isolated task cannot, under any reasonable interpretation, mean that Stern & Hendler's fees included a charge for preparation of the disclosure statement." This argument is without merit. The Commentary to Regulation Z specifically states that the finance charge must include "[f]ees for preparing a Truth in Lending [TILA] disclosure statement." Commentary, § 226.4(a). That Stern & Hendler billed Champion in a lump sum does not suggest that Stern & Hendler prepared the TILA statements free of charge. According to the Commentary, "[i]f a lump sum is charged for several services and includes a charge that is not excludable,

a portion of the total should be allocated to that service and included in the finance charge." Commentary, § 226.4(c)(7). Champion failed to do so. This failure to include all proper items in the finance charge constitutes a material TILA violation. 12 C.F.R. § 226.23(a)(3) n. 48, *Smith*, 898 F.2d at 905. Accordingly, plaintiff is entitled to rescind the transaction. *Smith*, 898 F.2d at 905.

■ As an additional basis for rescission, plaintiff claims that Champion committed a material TILA violation by including in the amount financed a $35 fee for recordation of Champion's security interest with the Philadelphia Department of Records. Bankers correctly notes that "[f]ees and charges prescribed by law which actually are or will be paid to public officials for determining the existence of or for perfection or releasing or satisfying any security related to the credit transaction" may be excluded from the finance charge and included in the amount financed if properly itemized and disclosed. 15 U.S.C. § 1605(d)(1). Champion did itemize and disclose a $35 recording fee in the amount financed. According to § 10–1001 of the Philadelphia Code and 72 Pa.Stat.Ann. § 3173, however, the filing fee "prescribed by law" and paid to a public official was only $25, not the $35 Champion charged plaintiff.

Footnote 41 of § 226.18(c) of Regulation Z permits the finance charge to deviate by $10 from the correct amount in a transaction involving more than $1,000. Bankers argues that the amount financed should be deemed to have a $10 tolerance as well. According to Bankers, the failure to read a $10 tolerance into the amount financed renders the permitted deviance in the finance charge meaningless, because a $10 deviation in the finance charge would otherwise always trigger TILA violations in the amount financed and the annual percentage rate. However, as plaintiff notes, not all typographical or mathematical errors in the finance charge would trigger violations in the other disclosures. The Federal Reserve Board's decision to permit deviations from the exact figure for the finance charge but not from the amount financed is not "obviously repugnant" to TILA. *Smith*, 898 F.2d at 901 (citation omitted). Conse-

quently, this court may not read such a provision into the Regulation.

Bankers also argues that plaintiff has failed to establish that the $10 overcharge was not properly excluded from the finance charge on some other basis. Bankers is asking plaintiff to prove a negative. Plaintiff has demonstrated that the proffered basis for excluding the $10 from the finance charge was incorrect. "[O]nly those charges specifically exempted from inclusion in the 'finance charge' by statute or regulation may be excluded from it." *In re Celona*, 90 B.R. 104, 112 (Bankr.E.D.Pa.1988) (citations omitted); *aff'd, Celona v. Equitable Nat'l. Bank*, 98 B.R. 705 (E.D.Pa.1989). No provision exempts a recording fee which is not both "prescribed by law" and "actually . . . paid to public officials" from the finance charge. 12 C.F.R. § 226.4(e)(1). The $10 overcharge in the amount financed therefore constitutes a material TILA violation which, standing alone, entitles plaintiff to rescind the transaction. 12 C.F.R. § 226.23(a)(3) n. 48, 15 U.S.C. § 1635, *In re Wright*, 133 B.R. 704, 709 (E.D.Pa.1991).[2]

This court recognizes the harshness of TILA in permitting rescission when the discrepancy in the amount of the finance charge and the amount financed is small, both in relation to the size of the loan and in real terms. Nevertheless, the Court of Appeals has declared that "[o]nce the court finds a violation, no matter how technical, it has no discretion with respect to liability." *Smith*, 898 F.2d at 898.

Both parties also move for summary judgment on plaintiff's claim that the interest rate charged on plaintiff's loan is usurious under Pennsylvania law. If plaintiff's loan is usurious, the parties agree that Champion's actions would have violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law, more commonly known as "UDAP." 73 Pa.Stat.Ann. 201–1 *et seq*. Violations of UDAP based on usury have been held to violate TILA disclosure requirements as well. *In re Brown*, 134 B.R. 134, 145 (Bankr.E.D.Pa.1991).

Defendant contends that the Depository Institutions Deregulation and Monetary Control Act ("DIDMCA"), 12 U.S.C. § 1735f–7a(a), preempts the Pennsylvania statute. To qualify for DIDMCA preemption, Champion must have made a loan to plaintiff "secured by a first lien on residential real property." 12 U.S.C. § 1735f–7a(a)(1). The parties vigorously dispute whether Champion obtained a "first lien" on the property. This court need not resolve this question, however, due to its conclusion that plaintiff is entitled to rescind the loan based on the TILA violations relating to the finance charge and the amount financed. For the same reason, this court also need not decide plaintiff's TILA claim regarding Champion's alleged failure to give plaintiff two copies of a notice of his right to rescind.

■ Plaintiff has also moved for summary judgment on his claim that he is entitled to a $1,000 statutory penalty and an award of costs and attorney's fees pursuant to § 1640(a) of TILA based on defendant's failure to respond to his notice of rescission. Section 1640(a) states in pertinent part:

> *[A]ny creditor* who fails to comply with any requirement under this part . . . with respect to any person is liable to such person in an amount equal to the sum of—
>
> . . . . .
>
> (2)(A)(i) in the case of an individual action twice the amount of any finance charge in connection with the transaction . . . except that the liability under this subparagraph shall not be less than $100 nor greater than $1,000 . . .
>
> . . . . .
>
> (3) . . . in any action in which a person is determined to have a right of rescission under section 1635 of this title, the costs of the action, together with a reasonable attorney's fee as determined by the court.

[Emphasis added]. 15 U.S.C. § 1640(a).

Bankers contends that because it is an assignee of Champion and not the original

---

**2.** Defendant's assertion that plaintiff has not verified by affidavit documents on which he relies is factually incorrect. Plaintiff's affidavit is attached as Exhibit 1 to his motion for summary judgment. *See* Pa.R.Civ.P. 76.

creditor, plaintiff cannot obtain relief other than rescission. 15 U.S.C. § 1641(a).

The term "creditor" is defined in § 1602(f) as referring only to an entity which

both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the [entity to which] the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness....

15 U.S.C. § 1602.

Plaintiff does not allege that Bankers satisfies the first condition, and Bankers clearly does not satisfy the second. Champion, not Bankers, was the entity initially payable on plaintiff's loan. As such, Champion, not Bankers, is the only "creditor" involved in the transaction.

TILA limits the remedies available against an assignee. Section 1641(a) unequivocally provides that

any civil action for a [TILA] violation ... which may be brought against a creditor may be maintained against an assignee of such creditor only if the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement....

15 U.S.C. § 1641(a).

Apparently Congress did not wish to impose liability for damages and attorney's fees on an assignee who was not responsible for and who had no notice of TILA disclosure violations at the time of an assignment.

In this case, no TILA violation is apparent on the face of the disclosure statement. Plaintiff argues that Bankers is nevertheless liable for refusing to respond to a valid rescission notice. While § 1641(c) provides that the right to rescind exists even against a creditor's assignee, § 1640(a) permits only a "creditor" to be held liable for a monetary penalty or an award of attorney's fees for a TILA violation. Neither § 1641 nor any other section provides for a statutory penalty or an award of attorney's fees to a plaintiff should an assignee fail to respond to a valid rescission notice. Rescission is therefore the only remedy against Bankers to which plaintiff is entitled. Accordingly, plaintiff's motion for summary judgment on the claim of entitlement to a statutory penalty, attorney's fees, and costs will be denied. Bankers' cross-motion for summary judgment on this claim will be granted.

This court's decision to grant the only remedy to which the plaintiff is entitled under TILA renders moot plaintiff's remaining TILA claims, which pertain to the reasonableness of the attorney fee charged by Stern & Hendler and to alleged fraud on the part of Champion. These claims will therefore be dismissed.

Plaintiff has also asserted state law claims under the Pennsylvania Loan Interest and Protection Law, 41 Pa.Stat.Ann. § 101 *et seq.*, and the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa.Stat.Ann. § 201–1 *et seq.* Plaintiff has not alleged that this court has diversity jurisdiction under 28 U.S.C. § 1332. Since the federal claims under TILA have been resolved, this court will decline to hear plaintiff's state law claims due to their novelty and complexity. 28 U.S.C. § 1367. Such claims will be dismissed without prejudice to the extent that they are independent of plaintiff's TILA claims.

## ORDER

AND NOW, this 25th day of March, 1994, for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that the motion for partial summary judgment of plaintiff Anthony Brodo is GRANTED in part and DENIED in part. Judgment is entered in favor of plaintiff Anthony Brodo and against defendant Bankers Trust Co., Trustee as follows:

1. Any security interest held by defendant Bankers Trust Co., Trustee arising from the loan transaction entered into on May 4, 1990 between Champion Mortgage Company and plaintiff Anthony Brodo is null and void. Defendant Bankers Trust Co., Trustee shall, within 40 days of this Order, take all steps necessary to reflect the termination of such security interest in

plaintiff's property located at 2345 South Chadwick Street, Philadelphia, Pennsylvania. Within 50 days of this Order, defendant Bankers Trust Co., Trustee shall deliver to plaintiff Anthony Brodo all documents indicating the satisfaction of any such security interest.

2. Plaintiff Anthony Brodo shall not be liable to defendant Bankers Trust Co., Trustee in connection with the loan transaction entered into on May 4, 1990 between Champion Mortgage Company and plaintiff Anthony Brodo for any finance charge, title insurance charge, notary fee, distribution fee, endorsement fee, filing fee or attorney's fee. Defendant Bankers Trust Co., Trustee shall credit any such amounts already paid to the original principal balance due on plaintiff's loan.

3. Defendant Bankers Trust Co., Trustee shall credit $14,264.87 towards the remaining principal balance on the loan entered into on May 4, 1990 between Champion Mortgage Company and plaintiff Anthony Brodo. This amount represents the total of payments made by plaintiff between May 4, 1990 and July 8, 1992.

It is further ORDERED that the motion for summary judgment of defendant Bankers Trust Co., Trustee is GRANTED in part and DENIED in part. Judgment is entered in favor of defendant Bankers Trust Co., Trustee and against plaintiff Anthony Brodo as follows:

1. Defendant Bankers Trust Co., Trustee is not liable for the attorney fees of plaintiff Anthony Brodo.

2. Defendant Bankers Trust Co., Trustee is not liable to plaintiff Anthony Brodo for statutory damages under 15 U.S.C. § 1640(a).

It is further ORDERED that the claims of plaintiff Anthony Brodo for violations of the Truth–In–Landing Act, 15 U.S.C. § 1601 *et seq.*, regarding the reasonableness of attorney's fees and alleged "bait and switch" practices are DISMISSED as moot.

It is further ORDERED that the claims of plaintiff Anthony Brodo arising under 41 Pa. Stat.Ann. §§ 101 *et seq.* and 73 Pa.Stat.Ann.

§ 201–1 are DISMISSED without prejudice, pursuant to 28 U.S.C. § 1367.