Shawn K. LAYELL, Debtor/Appellant,

v.

HOME LOAN AND INVESTMENT BANK, F.S.B., Appellee.

No. Civ.3:98CV652.

United States District Court,
E.D. Virginia,
Richmond Division.

April 22, 1999.

Henry W. Mclaughlin, III, Richmond, VA, for appellant.

David M. Malone, Damon W. Wright, Venable, Baetjer, Howard & Civiletti, L.L.P., Washington DC, for appellee.

## MEMORANDUM OPINION

PAYNE, District Judge.

Shawn K. Layell appeals from two separate orders entered by the Bankruptcy Court. The first order dismissed with prejudice Layell's Amended Complaint in an adversary proceeding to determine the validity of a mortgage held by Home Life and Investment Bank. *See Layell v. Home Loan & Investment Bank F.S.B.*, Bank. Case No. 97–38756–T, Adv. Case No. 98–03025 (June 23, 1998, as amended on August 10, 1998). The second order granted Home Life's motion for relief from the automatic stay entered in Layell's Chapter 7 bankruptcy case. *See Layell v. Home Loan & Investment Bank F.S.B.*, Bank. Case No. 97–38756–T, Cont. Matter No. 97–2085 (June 23, 1998). Layell raises numerous issues on appeal, only one of which seems to have merit: did the Bankruptcy Court err in concluding that no part of the $450.00 paid to the settlement attorney ($275.00 for attending the settlement plus $175.00 for document preparation) was an undisclosed finance charge?

## STATEMENT OF FACTS

In November 1996, Layell entered into negotiations with Home Life to refinance a mortgage on real estate and improvements which Layell had inherited and which was his primary residence. As a result of those negotiations, Home Life loaned Layell $48,188.00, secured by a mortgage on the property. The loan constituted a closed-end credit transaction subject to the

federal Truth–in–Lending Act, 15 U.S.C. § 1601 *et seq* ("TILA").

In connection with that credit transaction, the settlement attorney, David E. Johnson, delivered to Layell a disclosure document stating that the amount financed under the loan was $44,916.03 and that the finance charge was $143,160.33. Thus, the total amount owed under the loan was $188,076.36.

Johnson, who was then with the law firm Gouger and Johnson, P.C., also provided to Layell a HUD–1 Settlement Statement which itemized settlement charges to be paid from the proceeds of the loan to Layell. The settlement charges were not included in the amount disclosed as "finance charges."

Four of the settlement charges are relevant for purposes of this appeal: (1) $175.00 for "Document Preparation," payable to Gouger and Johnson, P.C.; (2) $275.00 for "Attorney's Fees," payable to Gouger and Johnson, P.C.; (3) a $16.00 "Recording Fee" to release a lien on the property; and (4) $22.50 for overnight delivery.

In April 1997, five months after the settlement, Layell ceased making payments on the loan. Home Loan subsequently instructed the trustee on the deed of trust to foreclose on the property. After receiving notice of a foreclosure set for December 16, 1997, Layell sent Home Loan a letter declaring that the credit transaction was rescinded pursuant to the TILA, 15 U.S.C. § 1635(I). This subsection of TILA allows a borrower, after the initiation of any judicial or nonjudicial foreclosure process on the borrower's primary dwelling which secures an extension of credit, to rescind the credit transaction if the finance charge was under-disclosed by more than $35.00.

On December 16, the date of the foreclosure sale, Layell filed for protection under Chapter 7 of the Bankruptcy Code, and the foreclosure was automatically stayed. Home Loan filed a motion for relief from the automatic stay. Layell then filed an adversary complaint against Home Loan alleging that in the TILA disclosures, Home Loan failed to disclose as part of the finance charge certain charges exceeding $35.00 that instead were described as part of the amount financed. Layell contended that this was a violation of Section 1635(I)(2) of TILA and that, therefore, he was entitled to rescind the loan transaction.

On April 27, 1998, the Bankruptcy Court held a hearing on Home Loan's motion for relief from the automatic stay and, at the same time, conducted a trial on Layell's Amended Complaint in the adversary proceeding. By separate orders entered on June 23, 1998, the Bankruptcy Court granted Home Loan's motion for relief from the automatic stay and dismissed with prejudice Layell's Amended Complaint against Home Loan in the adversary proceeding. Finding that, at most, Home Loan under disclosed the finance charge on the loan by $0.40, the Bankruptcy Court held that Layell could not rescind the credit transaction.

In a post trial motion, Layell asked the Bankruptcy Court to make new findings of fact, to amend findings of fact, to amend the judgment of June 23, 1998, and/or to grant a new trial. In response to this motion, the Bankruptcy Court made new findings of fact concerning the $275.00 listed as "Attorney's Fees to Gouger and Johnson, P.C." on the HUD–1 Settlement Statement. In particular, the Bankruptcy Court held that this fee did not comprise an undisclosed finance charge under TILA. *See* Mem.Op. and Order, Bank. Case No. 97–38756–T, Adv. Case No. 98–03025 (Aug. 10, 1998).

Layell appeals both the order granting Home Loan's motion for relief from the automatic stay, entered June 23, 1998, and the order, entered on June 23, 1998, and amended on August 10, 1998, dismissing with prejudice Layell's Amended Complaint against Home Loan in the adversary proceeding.

## ISSUES RAISED ON APPEAL

On appeal, Layell raises numerous issues respecting various rulings made by the Bankruptcy Court. Layell's main challenges can be summarized as follows:

(1) The Bankruptcy Court erred in concluding that the $450.00 paid to Gouger and Johnson, P.C. ($275.00 for attending the settlement plus $175.00 for document preparation) was not an undisclosed finance charge;

(2) The Bankruptcy Court erred in concluding that the $16.00 fee for release of a prior lien was not an undisclosed finance charge;

(3) The Bankruptcy Court erred in concluding that the $22.50 for overnight mail costs was not an undisclosed finance charge; and

(4) The Bankruptcy Court erred in concluding that Home Loan was a sufficient "party in interest" for purposes of obtaining relief from the automatic stay.

After reviewing the applicable law and the proceedings below, it appears that the second, third and fourth issues presented by Layell are without merit. Each was correctly resolved by the Bankruptcy Court and the decision on each of those issues is affirmed for the reasons given by the Bankruptcy Court.

The first issue, however, is not so readily resolved.

## DISCUSSION

### A. Standard of Review

■ The District Court has jurisdiction over this matter pursuant to 28 U.S.C. 158(a). Rule 8013 of the Bankruptcy Code states that factual findings shall not be set aside unless clearly erroneous. *See* Fed. R.Bank.P. 8013. Legal conclusions are reviewed de novo. *See Yi v. Citibank N.A.,* 219 B.R. 394, 396 (E.D.Va.1998).

### B. Statutory Framework

The Congressionally-stated purpose of TILA is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him." 15 U.S.C. § 1601(a). To that end, TILA requires a lender to disclose, among other matters, the finance charge to a borrower. 15 U.S.C. § 1638(a)(3). After the initiation of proceedings to foreclose a mortgage on the borrower's primary dwelling, the borrower may rescind the credit transaction if the amount disclosed as the finance charge differs from the actual finance charge by more than $35.00. *See* 15 U.S.C. § 1635(I).

"Fees for preparation of loan-related documents" are not considered part of the finance charge in a credit transaction which is secured by real property. *See* 15 U.S.C. § 1605(e)(2). Likewise, the implementing regulations for TILA provide that "[f]ees for preparing loan-related documents, such as deeds, mortgages, and reconveyances or settlement documents" shall be excluded from the finance charge, provided that such fees are *bona fide.* 12 C.F.R. § 226.4(c)(7)(ii).

### C. The "Document Preparation" Issue

The HUD–1 settlement statement listed the total sum payable to Gouger and Johnson, P.C., as $450.00. Of this amount, the statement designated $175.00 as the charge for "Document Preparation" and $275.00 as "Attorney's fees."

At trial, the settlement attorney, David Johnson, testified that $50.00 of the $175.00 "Document Preparation" fee was for preparation of a quitclaim deed. Under 15 U.S.C. § 1605(e)(2) and 12 C.F.R. § 226.4(c)(7)(ii), that amount was properly excluded from disclosure as a finance charge because a fee charged for preparing a deed in a residential mortgage transaction is not a finance charge, provided that the fee is *bona fide* and reasonable in amount. *See* 12 C.F.R. § 226.4(c)(7)(ii). The remaining $125.00 was for the prepa-

ration of a bundle of loan-related documents which included the TILA documents and documents required by RESPA ("Real Estate Settlement Procedures Act," 12 U.S.C. § 2601 *et seq.*).

At trial, Layell argued that, at least $35.00 of the $125.00 charged for preparing these various documents, which included TILA and RESPA documents, was not a *bona fide* charge and that, therefore, this fee should have been disclosed as a finance charge. Layell based his argument on a section of RESPA which provides that a lender may not impose charges on the borrower for fees relating to the preparation of TILA or RESPA statements. Specifically, Layell relies on 12 U.S.C. § 2610 which provides that:

> **Fee for preparation of truth-in-lending and uniform settlement statements**—No fee shall be imposed or charge made upon any other person (as part of settlement costs or otherwise) by a lender in connection with a federally related mortgage loan made by it ... for or on account of the preparation and submission by such lender or servicer of the statement or statements required (in connection with such loan) by sections 2603 and 2609(c) of this title or by the Truth in Lending Act [15 U.S.C.A. § 1601 et seq.].

Layell continues that argument on appeal.

Notwithstanding 12 U.S.C. § 2610, the Bankruptcy Court held that the fees charged for document preparation were *bona fide*. That decision was based on another provision of RESPA which provides that "[n]othing in this chapter shall affect the validity or enforceability of any sale or contract for the sale of real property or any loan, loan agreement, mortgage, or lien made or arising in connection with a federally related mortgage loan." 12 U.S.C. § 2615.

The Bankruptcy Court went on to hold, as a **matter of law,** that the "Official Staff Commentary to the Truth in Lending Act permits a 'lump sum'. charge for preparation of a bundle of settlement documents to be excluded from the finance charge **notwithstanding that this bundle may include Truth in Lending and RESPA documents."** *See* Findings of Fact, Conclusions of Law, and Order, Bank. Case No. 97–38766–T, Adv. Case No. 98–03025, at 7 (June 23, 1998) (emphasis added).

Finding as a matter of fact that the settlement attorney in the Layell credit transaction followed the standard industry practice by charging a "lump sum" for the preparation and review of all loan documents, including the TILA disclosure statement, the Bankruptcy Court held that these fees were properly excluded from the "finance charge" on the basis of this lump sum exception.

### D. Analysis

■ The Bankruptcy Court's rationale has a logical resonance but an analysis of the controlling provision of RESPA, the Official Staff Commentary to TILA and TILA's implementing regulations yields a different result.

There is no dispute that the TILA disclosure statement at issue in this case was prepared in connection with a federally related residential mortgage loan secured by real property.[1] As such, the fee charged to Layell for the preparation of this TILA statement was not permitted under RESPA, 12 U.S.C. § 2610.

However, as the Bankrupcy Court concluded, this does not end the inquiry into whether the document preparation fee charged in this case, which included preparation of the TILA disclosure statement, was or was not *bona fide* within the meaning of TILA. If the fee charged for docu-

---

**1.** RESPA defines the term "federally related mortgage loan" as "any loan ... which—(A) is secured by a first lien on residential real property ... and (B) is made in whole or in part by any lender the deposits or accounts of which are insured by any agency of the Federal Government, or is made in part by any lender which is regulated by any agency of the Federal Government...."12 U.S.C. § 2602(1).

ment preparation was not *bona fide* then the fee could not be excluded from TILA disclosure as a finance charge. *See* 12 C.F.R. § 226.4(c)(7). The Bankruptcy Court's decision that all fees charged for document preparation were *bona fide* was based on Section 2615 of RESPA which provides that "[n]othing in this chapter shall affect the validity or enforceability of any sale or contract for the sale of real property or any loan, loan agreement, mortgage, or lien made or arising in connection with a federally related mortgage loan." 12 U.S.C. § 2615.

■ That interpretation of RESPA essentially construes Section 2615 as preempting Section 2610. There is, however, nothing in the text of Section 2615 that requires the substantive provisions of Section 2610 to be disregarded. Furthermore, that interpretation of Section 2615 runs afoul of the principle that statutes must be construed as a whole and in such a way as to give each part its plain meaning effect.

More importantly, the Bankruptcy Court's decision is inconsistent with the Federal Reserve Board's Staff Commentary to TILA which, in defining "finance charge," explicitly provides that a fee charged for preparing a TILA Disclosure Statement is a finance charge. Specifically, the Staff Commentary provides:

> [T]he following items are finance charges ... (B) Fees for preparing a Truth in Lending disclosure statement, if permitted by law (for example, the Real Estate Settlement Procedures Act prohibits such charges in certain transactions secured by real property).

Official Staff Commentary, 12 C.F.R. Ch. II, pt. 226, Supp. I.

The Supreme Court has admonished that the Federal Reserve Board's "Official Staff Commentary" is to be given great weight when interpreting TILA and the regulations promulgated to enforce that section. *See Ford Motor Credit Co. v. Millhollin*, 444 U.S. 555, 565–70, 100 S.Ct.

790, 63 L.Ed.2d 22 (1980). The Staff Commentary, like RESPA Section 2610, makes clear that the fee charged for preparation of the TILA disclosure statement in this case was not permitted by law. Further, read as a whole, the Staff Commentary explains that any fee charged for the preparation of a TILA disclosure statement, whether permitted by law or not, must be disclosed to the borrower as a finance charge.

■ This interpretation of the Staff Commentary is more consistent with the overall purpose of TILA, a remedial statute which is "designed to protect consumers from inaccurate and unfair credit practices, and 'to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit.'" *Fairley v. Turan–Foley Imports, Inc.*, 65 F.3d 475, 479 (5th Cir.1995) (quoting 15 U.S.C. § 1601(a)). "The TILA reflects a transition in congressional policy from a philosophy of 'Let the buyer beware' to one of 'Let the seller disclose,'" *Mourning v. Family Publications Serv., Inc.*, 411 U.S. 356, 377, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973), and is to be liberally construed in favor of the consumer. *See, e.g., Fairley*, 65 F.3d at 479; *see also Williams v. Public Finance Corp.*, 598 F.2d 349, 356 (5th Cir.1979) ("TILA is designed to deter general illegalities which are only rarely uncovered and punished, and not just to compensate borrowers for their actual injuries in any particular case."). Thus, it appears that any fee charged for the preparation of a TILA disclosure statement must be considered a finance charge.

Moreover, the lump sum exception created by the Official Staff Commentary is not as broad as the one carved out by the Bankruptcy Court. The Official Staff Commentary states:

> Lump Sum charges. If a lump sum charged for several services includes a charge that is not excludable, a portion

of the total should be allocated to that service and included in the finance charge. However, a lump sum charged for conducting or attending a closing (for example, by a lawyer or title company) is excluded from the finance charge if the charge is primarily for services related to items listed in [12 C.F.R.] § 226.4(c)(7) (for example, reviewing or completing documents), even if other incidental services such as explaining various documents or disbursing funds for the parties are performed. The entire charge is excludable even if a fee for the incidental services would be a finance charge if it were imposed separately.

12 C.F.R. Ch. II, Pt. 226, Supp. I.

Thus, according to the Commentary, if the lump sum charge includes a charge that is not excludable, a portion of the total should be allocated to that service and included in the finance charge. It seems to follow that, where the lump sum charged includes a fee for the preparation of a TILA disclosure statement, which is a non-excludable fee under the Staff Commentary, a portion of the total should be allocated to the preparation of this document.

This issue was addressed in *Brodo v. Bankers Trust*, 847 F.Supp. 353 (E.D.Pa. 1994). In *Brodo*, the court granted in part and denied in part the plaintiff's summary judgment motion for rescission of a mortgage, alleging various TILA violations as the predicate for recession. *See id.* at 359. On facts similar to those presented here, the plaintiff alleged that the entire $450.00 paid to the settlement attorney could not be considered an excludable "lump sum" fee where part of this fee was for the preparation of a TILA disclosure statement. *See id.* at 357. The court agreed, holding:

> The Commentary ... specifically states that the finance charge must include "[f]ees for preparing a Truth in Lending disclosure statement." That [the settlement attorney] billed [the lender] in a lump sum does not suggest that [the

settlement attorney] prepared the TILA statements free of charge. According to the Commentary, "[i]f a lump sum is charged for several services and includes a charge that is not excludable, a portion of the total should be allocated to that service and included in the finance charge." [The lender] failed to do so. This failure to include all proper items in the finance charge is a material TILA violation. Accordingly, plaintiff is entitled to rescind the transaction.

*Id.* at 357 (internal citations omitted).

Although it may be, as the Bankruptcy Court found, that industry practice is not to charge individually for the preparation and review of a TILA disclosure statement, that practice contravenes the express language in the Commentary. Accordingly, it is necessary to remand the matter to the Bankruptcy Court to determine what part of the "Document Preparation" fee is attributable to the preparation of the TILA disclosure statement, and this amount should be classified as a finance charge.

### D. Did the Bankruptcy Court Commit Error in Ruling That the $275.00 Listed as "Attorney's Fees" was Properly Excluded From Disclosure as a Finance Charge Under the "Lump Sum" Exception?

#### 1. The Bankruptcy Court's Decision

In its Memorandum Opinion and Order of August 10, 1998, the Bankruptcy Court granted Layell's motion to make new findings of fact respecting whether the $275.00 listed on the HUD–1 settlement statement for "Attorney's Fees" was properly excluded from the amount disclosed as the finance charge.

 The Bankruptcy Court granted that motion and held that the $275.00 listed as "Attorney's Fees" was properly excluded from the finance charge by virtue of 12 C.F.R. §§ 226.4(c)(7), 226.4(a)(2) and Official Staff Commentary Supplement I to those sections. The Bankruptcy Court

held, as a matter of law, that "[t]hose sections when read together exclude a lump sum charged for conduction or attending a closing from being a finance charge." Mem.Op. and Order, Bank. Case No. 97–38756–T, Adv. Case No. 98–03025, at 5 (Aug. 10, 1998). Because the testimony of the closing attorney "indicated that the [$275.00] fee was for participating in the closing of this loan ... the Bankruptcy Court [found] that the $275.00 attorney fee was not a finance charge." *Id.*

The Official Commentary expressly provides that only where attorney's fees for attending a closing are **primarily** for exemptible services, such as the completion or review of loan documents, then the fees are permitted as a "lump sum" exception from classification as a finance charge. 12 C.F.R. Ch. II, Pt. 226, Supp. I ("[A] lump sum charged for conducting or attending a closing (for example, by a lawyer or title company) is excluded from the finance charge if the charge is *primarily* for services related to items listed in [12 C.F.R.] § 226.4(c)(7) (for example, reviewing or completing documents) ....").

Mr. Johnson's testimony at trial indicated that he did not consider the $275.00 listed on the HUD–1 settlement statement as "Attorney's Fees" to be *primarily* for the completion or review of settlement documents. Rather, when asked whether any part of the $175.00 labeled separately as "Document Preparation" was actually for "loan closing," Mr. Johnson replied, "I don't think so." (Tr. 92.) While Mr. Johnson's testimony does suggest that some part of the $275.00 charged for "Attorney's Fees" may have been for document review or explanation of documents at the closing (Tr. 95–96), it seems that, at best, such services were only incidental to his fee for attending the closing. Thus, it appears that the Bankruptcy Court improperly excluded the $275.00 charge for "Attorney's Fees" from classification as an undisclosed finance charge on the basis of the "lump sum" exception.

■ However, there is a separate basis for affirming the Bankruptcy Court's determination that the $275.00 listed as "Attorney's Fees" were not undisclosed finance charges. TILA provides that "[t]he finance charge does not include fees and amounts imposed by third party closing agents (including settlement agents, attorneys, and escrow and title companies) if the creditor does not require the imposition of the charges or the services provided and does not retain the charge." 15 U.S.C. § 1605(a).

■ Unfortunately, neither party addressed this issue on appeal, but there seems to be no dispute about it. And, a decision can be affirmed on appeal on any basis which appears in the record. *See County Fuel Co. v. Equitable Bank Corp.,* 832 F.2d 290, 294 (4th Cir.1987) (citing *Securities and Exchange Commission v. Chenery Corp.,* 318 U.S. 80, 88, 63 S.Ct. 454, 87 L.Ed. 626 (1943)); *United States v. Gould,* 741 F.2d 45, 46 (4th Cir.1984).

At trial, Layell argued that the $275.00 in "Attorney's Fees" were not *bona fide* because their imposition on the borrower violated Va.Code § 6.1–330.70(b), which provides that a "lender may not require the borrower to use the services of a particular attorney." The Bankruptcy Court found no merit in this argument and concluded that:

> There was no evidence presented that Home Loan required debtor to use David Johnson as the closing attorney or required the $275.00 fee. [T]here was no evidence that the loan would not be provided to debtor if he refused to use Johnson's services, which the court has no evidence that he did. Therefore, based on the evidence presented at trial, the court cannot find that Home Loan required debtor to use Johnson's services as a condition of extending credit, and thus Johnson's $275.00 charge for attorney fees is not precluded from being *bona fide* by Va.Code § 6.1–330–70(b).

Mem.Op. and Order, Bank. Case No. 97–38756–T, Adv. Case No. 98–03025, at 4 (Aug. 10, 1998).

It is clear, from the Bankruptcy Court's opinion, that Home Loan did not require the use of Johnson's services or require the imposition of the $275.00 in "Attorney's Fees." It is also undisputed that Home Loan did not retain any portion of Johnson's fees. Thus, these fees satisfy the statutory exception for fees imposed by third party closing agents. *See* 15 U.S.C. § 1605(a).

### CONCLUSION

The Bankruptcy Court's decision that a fee charged for preparing a TILA disclosure statement is not a finance charge is reversed and the matter is remanded for a determination of what portion of the "Document Preparation" fee should be included in the finance charge. The determination of the Bankruptcy Court that the "Attorney's Fees" for attending the closing are not finance charges is affirmed. In all other respects, the decision of the Bankruptcy Court is affirmed for the reasons given in its decision.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record. The Clerk shall not distribute copies by "electronic or computer means" unless explicitly directed.